The case is fully stated in the opinion of the court, delivered by
 

 Mr Justice M’Lean.
 

 This ¿ase is brought before this court by .a writ of error to the circuit court of the District of Columbia.
 

 The plaintiff commenced' an action of ejectment against the defendant, and on the trial showed a, legal_ title to the premises jn dispute, deduced from the patentee, by mesne' conveyances, down to the i3th of May
 
 1796. ■
 
 This title was not controverted by the defendant, as he claimed under it; but he read in evidence the following deeds and documents, to show that the title to the premises in controversy, was out of the plaintiff and in himself.
 

 1. Articles of agreement dated the 10th of July 1795, between the plaintiff, Robert Morris and John. Nicholson, in which the plaintiff sold all his title to a great number of lots in the city of Washington, for the consideration specified, reserving all lots which had been' sold previously, supposed to be nine hundred and ninety, and also certain pther lots designated.
 

 2. A deed of conveyance by the plaintiff to Morris and Nicholson, in pursuance of the above articles of agreement, dated the 13th of May 1796. In this deed, there is the following clause,
 
 “
 
 excepting névertheiess, out of the lots, squares, lands and tenements above mentioned, all that square, marked and
 
 *293
 
 distinguished on the plat of the sajd city of Washington, by the number 500, all that other square lying next to and south of. the said number, 506, &c., and excepting also all such squares, lots, lands or tenements, as were either conveyed or sold or agreed to be conveyed, either by all or either of them, the said James Greenleaf, John Nicholson and Robert Morris, or any of their agents or attorneys,‘to any person or persons whatsoever, at any time prior to the lfjth of July 1795.”.
 

 3. A deed from Morris and Nicholson, dated the 26th of October 1796, to William Duncanson, William Deakins, Jun., and Uriah Forrest, for the consideration of 50,000 dollars, for a great number of squares in Washington city, and among-others, square 75, all of which squares were stated to be worth 212,068 dollars.” In this deed there is excepted, “ such part of the said squares, and all, and every of them, as may have been heretofore sold by James Greenleaf, or by them the said Morris and Nicholson.”
 

 4. A deed from William Duncanson to Deakins and Forrest, dated 16th of August 1797, which conveyed to them all his interest in the squares recited in thfe above deed from Morris and Nicholson.
 

 5. The last will and testament of William Deakins, which vested in his brother, Francis Deakins, the' right of the testator to the above squares, for certain uses expressed in the will. •
 

 6. A deed from Francis Deakins to Uriah Forrest, dated the 31st of May.1802, for lot 17, in square 75, being the property in dispute, together with other lots in the same and other squares.
 

 7. The following instrument to" Shaw and Birth: — “We agree to convey to John Shaw and James Birth, their heirs or assigns, the lots number 16 and 17, in square number 75 in the city of Washington, assuring it against our heirs, and all persons claiming under us, on their paying two notes of this date, each for .450 dollars and 2 cents, bearing interest from and since the 1st day of September last past — one payable i he . 1st of September next, and the other the 1st of September 1801. Witness our hands and seals, this 16th October 1799.
 

 “ Uriah Forrest, [seal].”
 

 8. A .deed from the assignees of U. Forrest to John Shaw
 
 *294
 
 anil James Birth, daled 23d November 1807, for the lot in controversy.
 

 9. A deed by the trustee of Shaw to Birth, the defendant, for the same lot, dated 7th of August 1828.
 

 10. A letter from Forrest tó W. Cranch, the trustee of Green-leaf, stating that he had sold lot 17 with others, to which, he understdod, Cranch had a claim as part of the estate of Green-leaf; and a proposition is made that, should the property eventually be. decided to belong to the estate of Greenleaf, the purchase money, should be received in lieu of the property. This letter is without date.
 

 11. The reply of Mr Cranch, dated 2d November 1799, in which he consents to the proposition on certain conditions.
 

 Thomas Monroe, a witness, was introduced by the defendant, who stated in substance that the first occupation of the lot in controversy, known to him, was in May 1802. There was then a house on said lot, m which Shaw and Birth resided. This lot is bounded by the main avenue, leading from the President’s house to Georgetown. That the plaintiff was frequently in the city in the years 1794 and 1795; but witness did not see him in Washington between the years 1795 and 1802. He heard, soon after the transaction, of the contract of general Walter Stewart with Greenleaf, Morris and Nicholson, for the purchase of the lot in controversy, and several other lots and' squares in Washington. That Stewart built some houses and. commenced others, w.hich were left urifinished when he failed in business ; and that he died insolvent sometime about the year 1796. That after the deed from plaintiff to Morris and Nicholson, they seemed to have the management and control of the property conveyed by that instrument; and also to be generally recognized as- having the settlement of the sales of the joint property of Greenleaf, Morris and Nicholson, made before said conveyance; and as having the right to receive the purchase money from the several purchasers ; arid the witness states that one Davis acted as agent for general Stewart respecting' his purchases, and that after his death Davis continued to act as agent for his representatives.
 

 And it was also proved by defendant, that the said lot 17, in square 75, was assessed on the corporation books, to
 
 *295
 
 Shaw and Birth, from the year 1803 to the year 1828 ; and that the first assessment of corporation taxes was made in the year 1803. It was also proved, that.square 75 is not either of the squares described in the deed from plaintiff to Morris and. Nicholson, as lying next to, and south of square 506, and the one adjoining that square on the south. Defendant also proved, that Shaw and Birth took possession of lot 17, after their agreement with Forrest, in October 1799, and prior to that time it was under the superintendence of Joseph Forrest, as the agent ofU. Forrest.
 

 And the plaintiff, to explain and rebut the evidence introduced by the defendant, proved the contents of a written conr' tract under the hands and seals of'Morris, Nicholson and Green-béaf, on the one part, and Walter Stewart of the other, dated on the 19th of February 1795, in which Morris, Nicholson and Green leaf bargained and sold and covenanted to convey to said Stewart, on the 1st of June thereafter, certain lots and squares in the city of Washington
 
 ;
 
 and among others, the lot now in controversy. And to lay the foundation for the introduction of a copy of this agreement, the deposition of Walter C. Livingstone was read, in which he states that he has diligently searched, in various places, among the papers of Nicholson, for the original contract with Stewart, without being able to find it. That Nicholson died some years ago, insolvent. That the deponent received from W. P. Farrand a paper purporting to be a copy of said contract, a copy of which the deponent annexed to his deposition.
 

 The affidavit of the plaintiff was also read, stating that duplicates of the original agreement with Stewart were signed, one of which was taken by the affiant and the other was delivered to Stewart. That the affiant left his original with William Cranch, of Washington city, who was then acting as agent for -him, and he believes that the agreement was delivered to Nicholson, by Cranch, sometime -in the year 1796. That áffiant has never seen the paper since, although he has made diligent search for it among his own papers, and at many other places where he could expect to find it.
 

 William Cranch, being sworn, states, that for several years he acted as the agent of the plaintiff, and had the charge of his papers, &c. That his agency extended to property in
 
 *296
 
 which Nicholson and Morris were interested with the plaintiff. By means of this agency he became acquainted with'the transactions of the above parties, in relation to their property in Washington ; and he believes that, on the 10th of July 1795, and 13th of May 1796, there was, an existing.valid contract between Morris, Nicholson and Greenleaf, and the late general Walter Stewart, for the sale, by the former to the latter, of the lot in controversy. That he received from Greenleaf, then in Philadelphia, in a letter dated 19th February 1795, a paper purporting to be a copy of suoh an agreement., under the hands, and seals of the parties, by which the square 75, in Washington, with other squares, was contracted to be conveyed to Stewart, on or before the 1st of June 1795. That after the decease of Stewart, George Davis, of Philadelphia, acted as the agent of the representatives of Stewart, in relation to the property. ’ That he has a .strong impression that he saw the original contract with Stewart; and if he ever, had the original, he Iras' no doubt he compared it with a copy which he had previously made in a book, and which copy he sets forth in his deposition. Various other facts are stated by the witness, as . to notice given by him to certain purchasers, under Morris and Nicholson, of lots included in the Stewart contract, and which were excepted in the deed of 13th of May 1796 from the plaintiff to Nicholson and Morris; but he does not recollect of ever having given notice to Shaw and Birth, or either of them.
 

 It was insisted in the argument of this case, that the copy of the Stewart contract, which was admitted as evidence to the. jury, should have been excluded; as a sufficient foundation. for the admission of a copy was not laid; and that the paper ' read was a copy of a copy.
 

 This objection is sufficiently answered by saying, that the defendant can only take advantage of it on his own exception. The case is now before the court, on' the exceptions of the plaintiff.'
 

 The evidence being closed, the plaintiff, by his counsel, moved the court to instruct the jury,
 
 “
 
 that the evidence produced on the part of the defendant does not show a sufficient legal title to the premises in controversy vested in him, by the documents and deeds read in evidence.”
 

 The languagé of this instruction would seem to imply, that
 
 *297
 
 to make good his defence, the defendant must establish a legal title in himself.
 

 When, this case was before the court oh the former writ of error, the defendant insisted that the deed from-the plaintiff to Nicholson and Morris showed an outstanding title : the court said, “the defendant sets up no title in himself, but seeks to maintain his possession' as a mere intruder, by setting up a title in third persons with whom he has no privity. In such acase it is incumbent upon the party setting up the defence, to establish the.existence of such an outstanding title, beyond controversy.”
 

 The court do not say that the defendant could not show an outstanding title unless he exhibited some evidence of title in himself; but that where an intruder relies upon an outstanding. title, he must establish it beyond controversy.
 

 In the present case, the defendant gave in evidence to the jury a deed of conveyance from Morris and Nicholson, to Dun-canson, William Deakins, Jun. and Uriah Forrest, which covered the property in. controversy, unless it was excluded by the exception of “ such parts of the said squares, and all and every of them, as may have been heretofore sold.” • And also a deed from Duncanson to Deakins and Forrest, and a deed from the devisee of Deakins to Forrest, and a deed from the assignees of Forrest to Shaw and Birth ; and also a deed executed subsequently to the commencement of the action, from the trustee of Shaw to Birth,
 

 From this exhibition of title, it appears that the defendant Birth had a legal title to one half of the lot in controversy when the suit was-commenced; unless it was excluded by the exception in the deed from the plaintiff to Morris and Nicholson. And, whether this exception excludes the lot, depends upon other evidence than that which-the deeds referred to afford ; and of the effect of which, a part of it being in parol, the jury are the proper judges. It would seem, therefore, that the circuit court, when' requested to instruct the jury, that the defendant had not proved a sufficient legal title in himself, very properly refused to give the instruction.
 

 But the court, upon the prayer of the defendant’s counsel, gave the following instruction. . “ If the jury should believe from the evidence that, prior to October Í799, Uriah Forrest
 
 *298
 
 was in possession of the premises in the declaration mentioned, and that he agreed to sell the sanie to Shaw and Birth on the 16th of October
 
 1799 ;
 
 and that said Shaw and Birth, and the defendant claiming under-them, have been in possession of the same ever since, and that, they have paid the taxes on the same to the corporation of Washington ever since 1803, when .city property was first assessed ; and that no- claim or. demand for said premises was ever made upon them or.said defendant, until the bringing of this suit in 1818; then it is competent for the jury to. presume that the title to said premises passed from said . James Greenleaf, by the deed of the 13th of .May 1796; and that the said premises were not included-in any of the exceptions of said deed.”
 

 All the facts hypothetically stated in this instruction may be admitted, and yet the conclusion attempted to be deduced from them does not necessarily follow.
 

 The possession of the defendant did not enable him to plead in bar the statute of limitations ; nor had the ordinary time elapsed which authorizes the presumption of a-title. That the length of possession, and the other facts stated in the instruction were proper subjects of consideration for the jury, may be admitted; but the objection to the instruction is, that-it was founded on only a part of the evidence in the case.
 

 It does not embrace any of . the facts brought before the jury by the plaintiff, in relation to the contract with Stewart. This contract was introduced to show that- in February'1795, the lot in dispute was sold to Stewart, and was consequently within the exception of
 
 “
 
 all such squares, lots, lands or tenements, as were either conveyed, pr sold, or agreed to be conveyed,” which was contained in the deed from the plaintiff to Morris and Nicholson, of the 13th of May 1796.
 

 It is incumbent on the defendant, who cláims under this deed, to show that the lot-in question does not come within the exception. ‘ And the plaintiff may show that it does come within the
 
 exception;
 
 -and consequently that no title to this lot passed by the above deed. And if no title passed out of the plaintiff under this deed, then the fee remains in him, and he has a right to recover possession of the. premises.
 

 This was the main point in the case; but the evidence, wh.icb, the plaintiff insisted, proved the lot in controversy to be
 
 *299
 
 within the exception, was, by the instruction, excluded, from the consideration, of the jury. They were authorized to presume a conveyance of the lot, by the deed of 1796, upon the existence of facts wholly disconnected with Stewart’s contract; and the existence of which might be admitted without impairing the force of that contract. This was clearly erroneous. It was proper for the jury to consider this contract connected with the other evidence, and to draw their, conclusions, not from a part, but the whole of the facts in the cause.
 

 The counsel for the plaintiff further prayed the court to instruct the jury, that
 
 “
 
 the evidence was not sufficient to prove that the said contract between Morris, Nicholson and Green-leaf, on the one part, and W. Stewart on the other, had been annulled or rescinded between the parties, at any time prior to the execution of the deed by the plaintiff to Morris and Nicholson in May 1796.”
 

 If this instruction be considered as asking the court to determine on the effect of the evidence, it was properly refused. It is the province of the jury to weigh* and decide on the sufficiency of the evidence; and from the words of the instruction it would seem to be conceded, that there was some evidence of the rescisión of the contract, as the court were asked to instruct the jury that the. evidence was not suffipient to prove the fact. Where there is no evidence tending to prove a particular fact, the court are bound so to instruct the jury, when requested: but they cdnnot legally give.any instruction which shall take from the jury the right of weighing ,the evidence, and determining what effect it shall have. In this view the circuit court did not err in- refusing the above instruction.
 

 As the instruction given, on the prayer of the defendant, was founded on a-part of the evidence.only, the judgment of the circuit cóürt, must be reversed, and the cause remanded for further proceedings. .
 

 This cau^ came on to be heard on the transcript of the record from the circuit court of the United States for the district of Columbia, holden in and for the county of Alexandria, and was argued by counsel; on consideration whereof, it is ad
 
 *300
 
 judged and brdered, by this court, that the judgment of the said circuit court in this cause be, and the same is hereby reversed, and that this cause be-, and the same is hereby remanded, to the said circuit court, with directions to award a venire facias de novo.