WEIGHTMAN *vs.* THE CORPORATION OF WASHINGTON.

1. When a municipal corporation is required by its charter to keep a bridge in repair, if the duty was imposed in consideration of privileges granted, and if the means to perform it are within the control of the corporation, such corporation is liable to the public for an unreasonable neglect to comply with the requirement.

2. When all the foregoing conditions concur, a corporation is also liable for injuries to the persons or property of individuals.

3. This liability extends to injuries arising from neglect to perform the duty enjoined, or from negligence and unskilfulness in its performance.

This was a writ of error to the Circuit Court of the United States for the District of Columbia. The plaintiff in error

brought case against the corporation of Washington for bodily injuries suffered by him, in consequence of being thrown from the bridge across Rock creek, at the termination of K street. On the trial in the Circuit Court, the plaintiff proved that the charter of the city (sec. 13) provided that "the said corporation shall have the sole control and management of the bridge, and shall be chargeable with the expenses of keeping the same in repair, and rebuilding it when necessary." In May, 1854, the plaintiff, a citizen of Washington, was crossing the bridge in an omnibus, when the bridge broke down, and he was seriously injured. On part of the defendant, evidence was given that the bridge had been erected by skilful and scientific workmen, in good faith, upon a plan patented by the Government, and believed to be faultless in principle; that the construction was thought to be strong and solid, both the work and materials being of the best description; that the giving way of the bridge was the result of an accident and of an unknown defect in the plan of it; that when the bridge was completed, in 1850, its strength and capacity were amply tested; that a commissioner was appointed by the corporation of the city to inspect and superintend the bridge, who performed his duties, but did not discover any defect; that the corporation had no notice, either through their officer or otherwise, that the bridge was unsafe, and that in fact there was no indication of unsoundness in it before the time of its fall.

To rebut this evidence of the defendant, the plaintiff proved that the bridge was built by Rider, the patentee of the plan, who warned the officers of the city corporation in vain, against building the arch as high as they proposed to make it; that any bridge on that plan, unless it be horizontal, is unsafe, and the insecurity is increased in proportion as the arch is raised; that within a year after the bridge was put up the approach to it was changed at each end, adding thereby about three tons to its weight; that for several days before it fell, divers persons observed its unsafe condition.

The defendant prayed the court to instruct the jury that upon the whole evidence the plaintiff was not entitled to recover; and the court gave the instructions prayed for. A ver-

dict and judgment were accordingly given for the defendant, and the plaintiff sued out this writ of error.

*Mr. Bradley* and *Mr. Carlisle*, of Washington city, for plaintiff in error, contended that the judgment of the Circuit Court ought to be reversed by this court, because:

1. The terms employed in the clause of the 13th section of the charter are mandatory, and impose on the corporation the duty to keep in repair and rebuild the bridge in question when necessary. *Mason* vs. *Fearson*, (9 How., 248.)

2. The duty thus imposed on the corporation is an absolute and purely a ministerial duty. It involves no discretionary exercise of political or legislative power, and is precisely such as might have been devolved upon an individual. *Storrs* vs. *City of Utica*, (3 Smith, 17 N. Y., 104;) *Delmonico* vs. *City New York*, (4 Com., 1 Sand., 222;) *The Mayor, &c.*, *of Albany* vs. *Cunliff*, (2 Com., 165;) *Erie City* vs. *Schwingle*, (22 Penn., 584;) *Rochester Lead Company* vs. *City of Rochester*, (3 Coms., 467.)

3. The charter has provided the most ample means to enable the corporation to discharge this duty, by the imposition of taxes, and granting licenses; by holding and owning property, and receiving the rents, issues, and profits of real estate, to be employed by the corporate authorities in the support and execution of this, among other duties, with which they are charged. *Hutson* vs. *City of New York*, (3 Sand., 297; 7 John., 439; 7 Wend., 474; 2 Hill, 619; 6 ib., 463.)

4. The franchises thus granted to the corporation are the consideration on which they have, *by accepting the charter*, undertaken to discharge the duties and burthens imposed on them as conditions of the enjoyment of those franchises. (Grant Cor., p. 18, and cases in note;) *Rutter* vs. *Chapman*, (8th M. & W., 36, 85; Wilcock Mun. Corp., 30; Ang. & Am., 3d ed., chap. 2, § 7;) *Conrad* vs. *Trustees of Ithaca*, *Weet* vs. *Brockport*, (2 Smith, 191.)

5. The line of demarkation between these duties, which are immediate parts of, or incident to their political powers, and those which are purely and absolutely ministerial, is not always well defined, and may sometimes give rise to doubt; but it

may be safely affirmed that when a municipal corporation is distinctly charged with the execution of a specific duty for the benefit of the public and of individuals, and means are in the same or some other instrument put into their hands, adequate to its full performance, they may be compelled to perform it, and will be responsible to individuals injured by their negligent or improper performance of it. *Mayor of Lynn* vs. *Turner,* (Cowp., 86; Grant Corp., 501;) *Henley* vs. *Mayor of Lyme,* (5 Bing., 91; S. C., 1 Bing. N. C., 222, in error, 2 C. & F., 354, by all the judges;) *Mayor of New York* vs. *Furze,* (3 Hill, 612;) *Mayor of Albany* vs. *Cunliff,* (2 Coms., 165;) *Lloyd* vs. *City of New York,* (1 Seld., 369;) *City of Pittsburg* vs. *Grier,* (20 Penn., 64;) *The Mayor of Baltimore* vs. *Marriot,* (9 Maryland, 160, 178;) *Memphis* vs. *Lasser,* (9 Hump., 761.)

6. The bridge thus constructed by the corporation was its property, which they could take down and dispose of at their pleasure. One end of it rested on soil beyond their municipal jurisdiction, if the whole bridge was not also beyond it, and the corporation in its political character could have no control over it. Yet they were bound to repair and rebuild it out of their corporate funds, and they were responsible, if it became a public nuisance, to any one receiving special damage from the manner in which they discharged that duty. *Bailey* vs. *The City of New York,* (3 Hill, 531; S. C. 2 Denio, 433.) Having constructed it, they had no discretionary power as to keeping it in repair. *Wilson* vs. *Mayor of New York,* (1 Denio, 595;) *The Mayor of New York* vs. *Furze,* (3 Hill, 612; Kitty's Laws, 1791, chap. 45, § 1.)

*Mr. Davidge,* of Washington city, *contra.* The officers of the corporation are invested with power over the bridge as the agents of the public, from public considerations and for public purposes exclusively, and are not responsible for the nonfeasances or mis-feasances of sub-agents necessarily employed. The nature of the power is public, and its object is the benefit of the public. The bridge is a public bridge, and so alleged. It spans a navigable stream, and one abutment only is within the corporate limits.

It is not denied that a public municipal corporation may hold franchises or other property, in relation to which it is to be regarded as a private company, and subject to the responsibilities attaching to that class of institutions. *Bailey* vs. *The Mayor, &c., of New York,* (3 Hill's N. Y. Re., 531, 540;) *S. C. on error,* (2 Denio, 434;) *Moodalay* vs. *The East India Co.,* (1 Brown's Ch. R., 469.) But as regards the power under consideration here, it has not a single element of private ownership, but stands on precisely the same footing as the powers of the corporation over the streets of the city, which powers, it is judicially settled, are exercised by the corporation as agents of the public. *Smith* vs. *Corporation of Washington,* (20 How., 135, 148;) *Van Ness* vs. *Id.,* (4 Pet., 232.) Public agents are not responsible for the mis-feasance or non-feasance of those whom they are obliged to employ. To such cases the doctrine of *respondeat superior* does not apply. *Story on Agency,* (sec. 319—322;) *Hall* vs. *Smith,* (2 Bing., 156; 9 E. C. L. R.;) *Harris* vs. *Baker,* (4 Maul & Selw., 27;) *Lave* vs. *Colton,* (1 Ld. Raymond, 646;) *Whitfield* vs. *Lord Le Despencer,* (Cowp., 754;) *Duncan* vs. *Findlater,* (6 Clark & Finell, 903, 910;) *Dunlop* vs. *Munroe,* (7 Cranch, 242, 269;) *Bailey* vs. *The Mayor, &c., of New York,* (3 Hill's N. Y. Re., 532;) *S. C. on error,* (2 Denio, 434, 450;) *Schroyer* vs. *Lynch,* (8 Watts, 453;) *Boody et al.* vs. *United States,* (1 Woodb. & Minot, 151, 170;) *White* vs. *City Council,* (2 Hill S. C. R., 571;) *Supervisors of Albany Co.* vs. *Dorr,* (25 Wend., 440.)

It may be urged that it is not sought here to hold the corporation responsible for the neglect of its official subordinates, but for neglect in the appointments of them. But admitting, *argumenti gratiâ,* that for such neglect the superior would be liable, there is no evidence to show that the commissioner lacked capacity. Moreover, it has been settled by this court that, under an allegation framed as here, evidence of neglect in making the appointment or of not properly superintending the subordinate is not admissible; but that for such neglect a recovery can be had only, if at all, upon a declaration specially framed to meet the particular kind of negligence relied on. *Dunlop* vs. *Munroe,* (7 Cranch, 242, 269.)

And to the same effect is *Bishop* vs. *Williamson,* (2 Fairfield, 495, 506.)

2. At common law no action lies against public municipal corporations or *quasi* corporations created for public purposes, or against other public officers, for neglect to repair a public bridge or highway, unless the obligation to repair rests on tenure, prescription, or contract. The only remedy is by indictment. *City of Providence* vs. *Clapp,* (17 How., 161, and cases cited, p. 162.) In Bro. Abr., Title *Sur le case,* (pl. 93,) it is said that if a highway be out of repair so that a horse be mired and injured, no action lies, "*car est populus et serre reforme per presentment.*" In *Russell* vs. *The Men of Devon,* (2 T. R., 667)—the leading case upon the subject—the precedent in *Brooke* was cited and approved, and it was held that no action lay to recover satisfaction for injury done to a wagon in consequence of a bridge being out of repair. In *Riddle* vs. *The Proprietors of the Locks and Canals on Merrimac River,* (7 Mass., 169,) Parsons, C. J., took the same distinction between corporations created for the benefit of the public, as part of the government of the country, and those created for the benefit of the corporators; and held, that the former are liable only to information or indictment. *Mower* vs. *Leicester,* (9 Mass., 947;) *Young* vs. *Comm's of Roads,* (2 Nott and M. C., 555; Com. Dig., Chemin, H. 4, B. 3;) *Bartlett* vs. *Crozier,* (17 John., 439;) *Mowry* vs. *The Town of Newfane,* (1 Bar. S. C., 645;) *White* vs. *City Council,* (2 Hill's So. Car., 571;) *Haskell* vs. *Inhabitants of Knox,* (3 Greenl., 445.) The cases of *Mayor of Lynn* vs. *Turner,* (Cowp., 86,) *Henley* vs. *Mayor of Lyme,* (5 Bing., 91, and S. C., 1 Bing. N. C., 222,) are cases of *contract,* where the grantors of franchises or property held *on condition* that they would repair or do certain acts. The English books are filled with indictments for neglect to repair; but no instance can be found of an action when the duty to repair was created by statute for the benefit of the public, and was irrespective of franchise or other private advantage.

3. But again: it is sought here to hold a municipal corporation, acting *pro bono publico,* responsible not only for its own neglect to repair, but also for that of its officer in failing to

observe the ordinance for the inspection of the bridge. In *Towle* vs. *Common Council of Alexandria*, (3 Pet., 409,) the action was brought to recover damages for the non-feasance of an officer of a municipal corporation in failing to take a bond from an auctioneer as required by an ordinance. But this court held the corporation not responsible. In *Levy* vs. *City of New York*, (1 Sandf., 465,) it was held that the city was not bound by an injury sustained in consequence of a neglect of its officers to enforce an ordinance prohibiting swine running at large. So also in *Griffin* vs. *Mayor, &c., of New York*, cited in *Hutson* vs. *Mayor, &c., of New York*, (5 Sandf., 303, 304.)

4. If an action lies at all, it is only where an indictment could be maintained. The declaration assumes that the duty of the defendant in error to repair is identical with that of a private corporation or individual in relation to its own property. No *notice* is averred of the want of repairs, nor are the facts requisite to support an indictment. The consequences of holding a public municipal corporation, or other public officer, to the strict responsibility resting upon individuals and private companies acquiring and using property for their private enjoyment and profit, must be apparent, especially as regards a bridge or highway open at all times to the public. The rigid rule applicable to individuals and private companies flows from their exclusive rights over their own property; and such a rule can never be applied when the same rights do not exist, as in the case of a bridge or highway.

Mr. Justice CLIFFORD. This is a writ of error to the Circuit Court of the United States for the District of Columbia.

According to the transcript, the action was trespass on the case, and was brought by the plaintiff, to recover damages against the corporation, defendants, on account of certain personal injuries sustained by him from the falling of a certain bridge constructed by the authorities of the corporation, and which, as he alleged, they were bound to keep in good repair, and safe and convenient for travel.

Referring to the declaration, it will be seen that the plaintiff alleged, in substance and effect, that, at the time and long be-

fore the bringing of the suit, there was and still is a certain common and public bridge over Rock creek leading from K street north, in the city of Washington, to Water street in Georgetown, and that the defendants had been accustomed to keep the same in repair, and, of right, ought to have made such repairs to the same as to have rendered it safe and convenient for travel by the citizens generally, whether on foot, or with their horses, carts, carriages, or other vehicles; nevertheless, the plaintiff averred that the bridge, on the twentieth day of May, 1854, was in an insecure, unsafe, and dangerous condition, by reason of the default and negligence of the defendants, so that, while the plaintiff was then and there lawfully passing over and across the same, in an ordinary vehicle, the bridge, in consequence of its unsafe and insecure condition, and of the default and negligence of the defendants, broke, gave way, and fell in, whereby the plaintiff was, with great force, thrown and precipitated into the creek, and received the injuries particularly described in the declaration.

Issue was duly joined between the parties, upon the plea of not guilty filed by the defendants, and upon that issue the parties went to trial. Evidence was introduced by the plaintiff, showing that he was returning from Georgetown to the city of Washington at the time the accident occurred, and was riding in one of the omnibuses running between the two cities; that while crossing the bridge in the omnibus the bridge gave way and fell, and the vehicle, with the plaintiff in it, was precipitated into the creek, whereby he narrowly escaped drowning. His left arm was broken and his left hand crushed; and the statement of the bill of exceptions is, that "the hand and arm have been rendered useless for life." He was also seriously bruised; and his injuries were of such a character that he was confined thereby to his house for a long time, under medical attendance; and the case shows that, throughout the whole of that period of time, he suffered great bodily pain.

On the other hand, evidence was given by the defendants that, before any plan of the contemplated structure was adopted, they passed an ordinance, raising a committee to advertise for proposals for the erection of the abutments and construction

of the bridge.   That committee consisted of the mayor and two other members of the council; and the evidence offered by the defendants tended to show that they took the opinion of scientific men upon the subject, before they approved the plan under which the bridge was built, and that the defendants acted in good faith throughout, and with a view of building a bridge suitable, in all respects, for the purposes for which it was required.   They also offered evidence tending to show that the materials of the bridge were of the best description, that the work was carefully examined by their agents as the same was done, and that the giving way of the bridge was solely the result of accident, arising from a defect in the plan under which it was constructed.   After the bridge was built, the defendants passed another ordinance, appointing a commissioner to inspect the bridge; and they introduced evidence tending to show that he never ascertained or reported to them that the bridge was unsafe, defective, and out of repair; and they insisted at the trial, and offered evidence tending to prove, that they had no notice from that officer, or otherwise, that the bridge was insecure, unsafe, or defective, either in principle or in fact.

Rebutting evidence was then given by the plaintiff, showing that the bridge was an iron bridge, with a single span of more than a hundred feet; that it was constructed on the plan of Rider's patent, and was built by the inventor of that improvement.   He also gave evidence tending to prove that one of the scientific persons, whose opinion was sought by the committee appointed under the first ordinance, stated to the defendants, at the time he was consulted, to the effect that, although the principle of the plan was correct, still it could not be applied indefinitely to iron bridges; that the arch of the bridge was higher than had ever before been attempted, and that the contractor remonstrated against building it so high, but that the defendants required it to be so constructed; and he also proved that the contractor was still of the opinion that the bridge fell in consequence of the height of the arch.   One of the committee, also, was examined by the plaintiff, and he testified that he was not consulted about the plan; that, al-

though he believed it to be a good one at the time, he is now satisfied that it was essentially and radically defective. He also examined the commissioner of the first ward, who testified that he crossed the bridge a few days before the accident occurred, and that it was so tremulous and shook so violently that he was apprehensive it would fall; and divers other witnesses testified that, for several days before the bridge fell, they had observed that several of the braces were broken, and some of the wedges had fallen out, and the bridge was loose and shook greatly when carriages passed over it.

At the prayer of the defendants the court instructed the jury that, upon the whole evidence, the plaintiff could not recover in this action, and the plaintiff excepted. Under the instructions of the court, the jury returned their verdict in favor of the defendants.

1. Looking at the whole evidence, it is obvious that the charge of the court cannot be regarded as correct, unless it be true, as is contended by the defendants, that they are not responsible in damages to an individual for injuries received by him in crossing the bridge, although it may appear that the injuries were received without any fault of the complaining party, and were occasioned solely through the defect of the bridge, and the default and negligence of the defendants. It is conceded that the defendants were bound by their charter to maintain the bridge and keep it in repair; and it is fully proved, and not denied, that it was defective and very much out of repair at the time the accident occurred. Full and uncontradicted proof was also adduced by the plaintiff that he was seriously and permanently injured; and it is not possible to doubt, from the evidence, that his injuries were received without any fault of his own, and solely through the insufficiency of the bridge and its want of repair. Want of ordinary care on the part of the plaintiff was not even suggested at the trial, and the circumstances disclosed in the evidence afford no ground whatever for any such inference.

Having shown these facts, it only remained for the plaintiff to prove if the defendants, under any circumstances, are responsible, in this form of action, for such an injury, that they

were in default, and had been guilty of negligence in suffering the bridge to continue open for public travel while it was known to be out of repair and insecure. Both sides introduced testimony on this point, but the charge of the court withdrew entirely the plaintiff's evidence from the consideration of the jury. Where there is no evidence to sustain the action, or one of its essential elements, the court is bound so to instruct the jury; but where there is evidence tending to prove the entire issue, it is not competent for the court, although the evidence may be conflicting, to give an instruction which shall take from the jury the right of weighing the evidence and determining its force and effect, for the reason that, by all the authorities, they are the judges of the credibility of the witnesses, and the force and effect of the testimony. *Greenleaf* vs. *Birth*, (9 Pet., 299;) *Bank of Washington* vs. *Triplet et al.*, (1 Pet., 31.) Applying that rule to the present case, it is clear, in view of what has already been stated, that the charge of the court cannot be sustained, if the defendants are liable in this form of action, under any circumstances, for such an injury.

2. It is not, however, upon any such ground that the defendants attempt to sustain the instruction, but they insist that, being a municipal corporation, created by an act of Congress, they are invested with the power over the bridge merely as agents of the public, from public considerations and for public purposes exclusively, and they are not responsible for the non-feasances or mis-feasances of the persons necessarily employed by them to accomplish the object for which the power was granted. Municipal corporations undoubtedly are invested with certain powers, which, from their nature, are discretionary, such as the power to adopt regulations or by-laws for the management of their own affairs, or for the preservation of the public health, or to pass ordinances prescribing and regulating the duties of policemen and firemen, and for many other useful and important objects within the scope of their charters. Such powers are generally regarded as discretionary, because, in their nature, they are legislative; and although it is the duty of such corporations to carry out the

powers so granted and make them beneficial, still it has never been held that an action on the case would lie against the corporation, at the suit of an individual, for the failure on their part to perform such a duty. But the duties arising under such grants are necessarily undefined, and, in many respects, imperfect in their obligation, and they must not be confounded with the burdens imposed, and the consequent responsibilities arising, under another class of powers usually to be found in such charters, where a specific and clearly-defined duty is enjoined in consideration of the privileges and immunities which the act of incorporation confers and secures. Where such a duty of general interest is enjoined, and it appears, from a view of the several provisions of the charter, that the burden was imposed in consideration of the privileges granted and accepted, and the means to perform the duty are placed at the disposal of the corporation, or are within their control, they are clearly liable to the public if they unreasonably neglect to comply with the requirement of the charter; and it is equally clear, when all the foregoing conditions concur, that, like individuals, they are also liable for injuries to person or property arising from neglect to perform the duty enjoined, or from negligence and unskilfulness in its performance. At one time it was held that an action on the case for a tort could not be maintained against a corporation; and, indeed, it was doubted whether assumpsit would lie against a corporation aggregate, since, it was said, the corporation could only bind itself under seal; but courts of justice have long since come to a different conclusion on both points, and it is now well settled that corporations, as a general rule, may contract by parol, and, like individuals, they are liable for the negligent and unskilful acts of their servants and agents, whenever those acts occasion special injury to the person or property of another. Whether the action in this case is maintainable against the defendants or not, depends upon the terms and conditions of their charter, as is obvious from the views already advanced.

By the second section of their charter it is provided, among other things, that they shall continue to be a body politic and corporate, * * * "and, by their corporate name, may sue and

be sued, implead and be impleaded, grant, receive, and do all other acts as natural persons." They may purchase and hold real, personal, and mixed property, and dispose of the same for the benefit of the city. Large and valuable privileges also are conferred upon the defendants; and the thirteenth section of the charter provides, in effect, that the defendants shall have the sole control and management of the bridge in question, * * * "and shall be chargeable with the expense of keeping the same in repair, and rebuilding it when necessary." Comment upon the provision is unnecessary, as it is obvious that the duty enjoined is as specific and complete as our language can make it; and it is equally clear, that the bridge is placed under the sole control and management of the defendants; and, in view of the several provisions of the charter, not a doubt is entertained that the burden of repairing or rebuilding the bridge was imposed upon the defendants, in consideration of the privileges and immunities conferred by the charter. Most ample means, also, are placed at the disposal of the defendants, or within their control, to enable them to perform the duty enjoined. Whatever difference of opinion there may be as to the other conditions required to fix the liability, on this one, it would seem, there can be none, as the defendants have very large powers to lay and collect taxes on almost every description of property, real and personal, as well as on stocks and bonds and mortgages, and they also derive means for the use of the city from granting licenses, and from the rents and profits of real estate which they own and hold. All the conditions of liability, therefore, as previously explained, concur in this case.

It is supposed by the defendants, that the decision of this court in *The City of Providence* vs. *Clapp*, (17 How., 161,) is opposed to the right of the plaintiff to maintain this action; but we think otherwise. Injury had been received by the plaintiff in that case, in consequence of one of the principal streets of the city having been blocked up and encumbered with snow ; and the principal question was, whether such an obstruction was one within the meaning of the statute of the State on which the action was founded ; and the court held that the city was

liable. Cities and towns are required by statute, in most or all of the northeastern States, to keep their highways safe and convenient for travellers by day and by night; and if they neglect that duty, and suffer them to get out of repair and de- fective, and any one receives injury through such defect, either to his person or property, the delinquent corporation is responsible in damages to the injured party. No one, however, can maintain an action against the corporation grounded solely on the defect and want of repair of the highway, but he must also allege and prove that the corporation had notice of the de- fect or want of repair, and that he was injured, either in person or property, in consequence of the unsafe and inconvenient state of the highway. Duty to repair, in such cases, is a duty owed to the public, and consequently, if one person might sue for his proportion of the damages for the non-performance of the duty, then every member of the community would have the same right of action, which would be ruinous to the corpora- tion; and, for that reason, it was held, at common law, that no action, founded merely on the neglect to repair, would lie. It was a sound rule of law, and prevails everywhere to the present time. Reference is often made to the case of *Russell* vs. *The Men of Devon,* (2 Term, 667,) as an authority to show that no action will lie against a municipal corporation in a case like the present; but it is a misapplication of the doctrine there laid down. Suit was brought, in that case, against the inhabitants of a district, called a county, where there was no act of incor- poration, and the court held that the action would not lie; ad- mitting, however, at the same time, that the rule was otherwise in respect to corporations. But whether that be so or not, the rule here adopted has been fully sanctioned in all the Eng- lish courts. *Henley* vs. *The Mayor, &c., of Lyme,* (5 Bing., 91.) It was ruled in the Common Pleas by Best, Ch. J., and the case was then removed into the King's Bench by writ of error, and was then decided by Lord Tenderden and his associates in the same way. *Same* vs. *Same,* (3 Barn. & Adol., 77.)

Judgment of affirmance having been given in the King's Bench, the cause was removed to the House of Lords by an- other writ of error, sued out by the same party    Baron Parke

gave the opinion on the occasion, all of the other judges and the Lord Chancellor concurring. Among other things, he said that, in order to make good the declaration, it must appear, first, that the corporation is under a legal obligation to repair the place in question; secondly, that such obligation is matter of so general and public concern that an indictment would lie against the corporation for non-repair; thirdly, that the place in question is out of repair; and lastly, that the plaintiff has sustained some peculiar damage beyond the rest of the king's subjects by such want of repair; and after explaining these several conditions, and showing that the case fell within the principles laid down, he stated that it was clear and undoubted law, that wherever an indictment would lie for non-repair, an action on the case would lie at the suit of a party sustaining any peculiar damage. *Mayor of Lyme Regis* vs. *Henley,* (2 Cl. and Fin., 331.) Numerous decisions have, since that time, been made by the courts in this country, approving the rule laid down in that case, and applying it to cases like the present. *Erie* vs. *Schwingle,* (22 Penn., 384;) *Storrs* vs. *The City of Utica,* (17 N. Y., 104;) *Conrad* vs. *The Trustees of Ithaca,* (16 N. Y., 159;) *Browning* vs. *The City of Springfield,* (17 Illinois, 143;) *Hutson* vs. *The City of N. Y.,* (5 Sand., S. C. R., 289;) *Lloyd* vs. *The Mayor, &c.,* of the *City of N. Y.,* (1 Seld., 369;) *Wilson* vs. *City of N. Y.,* (1 Denn., 595; 2 Denn., 450;) *Rochester White Lead Co.* vs. *The City of Rochester,* (3 Conn., 463;) *Smoot* vs. *The Mayor, &c,* of *Wetumpka,* (24 Ala., 112;) *Hicocke* vs. *The Trustees of the village of Plattsburg,* (15 Barb., S. C., 427;) *Mayor, &c.,* of *N. Y.* vs. *Furze,* (3 Hill, 612.) Contrary decisions, undoubtedly, are to be found, but most of the cases are based upon a misapplication of what was decided in *Russell* vs. *The Men of Devon,* to which reference has already been made, and which is certainly not an authority for any such doctrine at the present time. In view of the whole case, we are of the opinion that the charge of the Circuit Court was erroneous, and the judgment is accordingly reversed with costs, and the cause remanded, with directions to issue a new venire.