LAFAYETTE C. BAKER ET AL.

*vs.*

THE CITY OF WASHINGTON ET AL.

---

The Board of Aldermen and Board of Common Council of the city of Washington had no power to pass the Act of the 17th of April, 1865, offering a reward of $20,000 for the arrest and conviction of the assassins of President Lincoln, and thereby to bind the city.

In Equity.   No. 790.   Decided October 10, 1870.

APPEAL from a decree dismissing a bill filed to compel the payment of a reward offered for the arrest of the assassins of President Lincoln, and to settle the rights of the parties thereto.

THE FACTS are stated in the opinion.

Messrs. A. G. RIDDLE and THOMAS WILSON for complainants.

Mr. ENOCH TOTTEN for defendant.

Mr. Justice HUMPHRIES delivered the opinion of the Court:

The appellants exhibited their bill of complaint in this court October 10, 1866, against the city of Washington and forty-one persons, alleging that on the 17th day of April, 1865, the Board of Aldermen and Board of Common Council of the city of Washington passed an act entitled "An Act offering a reward of $20,000 for the arrest and conviction of the person or persons who assassinated President Lincoln and attempted the murder of Secretary Seward."

This Act is in these words: "Be it enacted by the Board of Aldermen and Board of Common Council of the city of Washington; that the mayor be, and he is hereby authorized and requested to offer a reward of twenty thousand

dollars for the arrest and conviction of the person or persons who were concerned in the assassination of President Lincoln, and attempted the murder of Secretary Seward and family on the evening of the 14th inst.; *Provided*, That if more than one should be arrested and convicted then the said amount shall be apportioned accordingly. Approved April 17, 1865."

In pursuance of this Act, the Mayor issued a proclamation offering the reward. Several persons were arrested, brought to trial, convicted, sentenced to suffer death, and executed as the assassins of President Lincoln.

The bill further alleges that the plaintiffs, and the other persons named therein, procured the arrest, or aided therein, or actually did arrest, those who were convicted and executed.

The bill is brought by plaintiffs on behalf of all others concerned in the arrest and conviction, as well as themselves, and prays for a decree against the city of Washington for the sum of $20,000, and that the same be distributed between such parties to the bill, or other persons who may come in to be made parties, as shall be found entitled to share in the reward.

Nearly all the parties claiming to share in the reward were in some other capacity in the employment of the Government. No one, however, held a commission as marshal, sheriff, constable, or other officer doing and performing the ordinary duties of civil, ministerial, or executive officers. A few were private citizens.

There is some controversy between the parties claiming the reward as to the share which each is entitled to.

The evidence in the cause establishes the fact that the parties claiming did participate in some way in the arrest and conviction of the murderers.

The bill states that the complainant, Lafayette C. Baker, was, at the time of the capture of the assassins, chief of the military detectives in the employment of the United States;

that Luther B. Baker and Everton J. Conger were also detectives in the employment of said Lafayette C. Baker; that he, the chief detective, procured the detail of twenty-five soldiers of the Sixteenth Regiment of New York Volunteers (cavalry) under command of Lieutenant E. P. Doherty, and these are made parties to the bill, and assert a claim to share in the reward.

The other parties to the bill claiming to participate in the reward claim to have given information which led to the conviction of Harold and Payne.

The answer of the city of Washington admits the Act and proclamation offering the reward, and neither admits nor denies any other allegation in the bill. The justice before whom the cause was tried in the Equity Court dismissed the bill without cost to either party.

The corporation of the city of Washington appears in this court, by its attorney, and presses upon us the question of the authority of the city to raise money by taxation to pay the amount of the reward, and contends that the Board of Aldermen and Board of Common Council of the city of Washington had not power to bind the city by the Act of April 17, 1865, offering the reward of $20,000.

This is the principal and main point made, and seriously urged in the discussion of this case.

Other questions have been discussed, but they have arisen more between the parties claiming the reward, and for the present it is unnecessary to pass upon them.

Section 2 of the Act of Congress of May 15, 1820, enacts "that the inhabitants of the city of Washington shall continue to be a body politic and corporate, by the name of the Mayor, Board of Aldermen and Board of Common Council of the city of Washington, to be elected by ballot, etc., and by their corporate name may sue and be sued, implead and be impleaded, grant, receive, and do all the other acts as natural persons, and may purchase and hold real estate."

Section 2, of the Act of Congress of May 17, 1848, to

amend the charter of the city, provides that "The said corporation shall have full power and authority to make all necessary laws for the protection of public and private property, the preservation of order, and the safety of persons, and the observance of decency in the streets, avenues, alleys, public spaces, and other public places in the said city, and for the punishment of all persons violating the same, as well as for the punishment of persons guilty of public profanity and prostitution."

It must be admitted that the question presented for our consideration, involving the power of the corporation to bind the property of the inhabitants of the city to submit to taxation for acts not in the ordinary routine of the affairs of towns and cities, is not without embarrassments and difficulties.   It is contended by counsel for the claimants of the reward, that under the recited provisions of the charter, "The Act of the boards of April 17, 1866, was fully authorized."

Under the power and authority to make all necessary laws for the preservation of order and the safety of persons, it will not be urged that the corporation can provide for the trial, conviction and punishment of murder.   Within the District of Columbia, the nation provides for the trial and punishment of those offenses that are provided for by the States within their respective territorial limits.   High crimes and misdemeanors are offenses against those powers whose laws declare their punishment.

The grant of power to make laws for the preservation of order and the safety of persons must be construed with reference to the object of the grant.

The general purposes and objects of municipal corporations are, as well understood, to be limited to the ordinary affairs and transactions of associations of people as are the objects of State grants understood to embrace all the ordinary, as well as the extraordinary, affairs and transactions of a people.

A felony perpetrated within this District is an offense against the United States, because the laws of the United States are violated, and those laws prescribe the punishment of the offense. The object of granting a municipal corporation to the inhabitants of the city of Washington, was not that their property should bear the burthen of maintaining the laws of the Union against infraction. Nor was the grant of power to the corporation to make all necessary laws for the preservation of order and the safety of persons intended or designed to commit the inhabitants of the city to a recognition of acts of the Boards of Aldermen and Common Council, by which they would undertake to bear the expenses of apprehending the criminals of the District.

There could be no broader grant than that of full power and authority to make all necessary laws for the protection of public and private property, the preservation of order and the safety of persons; yet in the very nature of the grant this power is very limited—limited in the objects, but unlimited where a proper object or subject is presented. Within the proper sphere the power is broad, but the sphere is circumscribed.

To arrest, try, convict and execute the murderers of President Lincoln was the concern and business and duty of the nation. The power of the Government of the United States to use all the means necessary to bring the offenders to justice was undoubted. Its power to levy taxes in order to raise the money cannot be questioned. The inhabitants of the city of Washington, in common with the inhabitants of every other city and town in the Union, must bear their proportion of the taxes necessary to secure the money to pay the expenses of the detection, trial and conviction of the perpetrators of the crime; and doubtless the sum of $20,000 could have been raised from private contributions in the city had it been necessary to do so, but the construction of a power of government can be measured by no rule of mere philanthropy.

Nor is it necessary to invoke the rule of strict construction in the common use of the words, to exhibit the absence of power in a municipal corporation to bind the inhabitants of a city or town by acts outside of the objects and purposes for which they were incorporated. The most liberal and latitudinous construction—so long as true government is maintained—can give no legal force to acts not warranted by the nature of the institution. The very nature of the city government limits its powers.

The properly constituted authorities of a municipal corporation may bind it whenever they have the power to act in the premises. Cincinnati *vs.* Morgan, 3 Wallace, 275. Where, however, they act outside of the premises their power ceases.

They do act outside of the premises whenever they undertake to do that which is foreign to the purposes of their creation. The whole subject of the reward in this case belonged to the Government of the United States. All offense against the corporation was merged in the higher offense against the laws of the United States.

A town or city corporation is not organized with the view of enforcing the criminal laws of the State—in this instance the United States?

The inhabitants of this city never contemplated that in a charter giving power to regulate their own peculiar local affairs it could be implied that the Boards of Aldermen and Common Council would be empowered to burden them with the execution of the laws of the United States.

In Thomson *vs.* Lee County, 3 Wall., 330, the opinion holds this language: "A county or other municipal corporation has no inherent right of legislation, and cannot subscribe for stock in a public improvement unless authorized to do by the legislature. Such a corporation acts wholly under a delegated authority and can exercise no power which is not in express terms, or by fair implication, conferred upon it." The charter for the city of Washington

is derived from Congress, and all the powers thereof granted by acts defining and limiting those powers, and it will be found that from time to time new acts have been passed, thereby recognizing the safety of the principle of the corporation appealing to the proper authority to enlarge its powers. The inhabitants of the city are thus secured from the consequences of hasty legislation by their boards. The Congress, in its legislation for the cities of Washington and Georgetown, has recognized the principle of strictly confining taxation to the objects specified to the different amounts.

The Act of May 5, 1864, to amend the first paragraph of Section 8 of the Act of May 15, 1820, and the Act of February 25, 1865, authorizing the corporation of Georgetown to levy certain taxes, are both striking instances of the principle.

The case of Thompson *vs.* Carrol, 22 How., 422, decides that the corporation of the city of Washington cannot by ordinance increase a power given by law, even upon a subject over which it is empowered to act generally. Weightman *vs.* The Corporation of Washington, 1 Black, 39, may be cited as authority against the power of the corporation to tax the inhabitants for an object not prescribed as a duty on the part of the corporation. The second and thirteen sections of the charter are commented upon by the court, and the reasoning, on page 51 of the opinion, will exclude the power of the corporation in the case before us.

In the cases cited by counsel for complainants, it will be found that authority had been given by Acts of the legislatures of the States to the corporations to act in the premises. We have been unable to find any case overturning the case of Gale *vs.* The Inhabitants of South Bernick, 51 Maine, 174. This case from Maine was very much as the one before us. The Revised Statutes, 1857, gave to towns, among other powers, power to raise money for other necessary town charges. A reward had been offered

at a legal meeting for the detection of an unknown murderer. He was afterwards arrested and convicted through the agency of the plaintiff, who sued for the amount of the reward. It was contended for plaintiff that under the grant to "raise money for necessary town charges," the corporation could legally raise money to pay the reward. The court says that these words do not constitute a new and distinct grant of indefinite and unlimited power to raise money at the will and pleasure of a majority. They embrace all incidental expenses arising directly or indirectly, in the due and legitimate exercise of the powers conferred upon the town.

We think the same restriction is to be placed upon the words, "and to do all other acts as natural persons," contained in the charter of 1820, and the clause in the Act of 1848 giving full power and authority to make all necessary loans for the protection of public and private property, the preservation of order and the safety of persons.

These powers can be construed to properly extend only to those loans necessary to the discharge of corporate duties.

*The decree dismissing the bill is affirmed.*