PRYOR BROWN TRANSFER COMPANY *et al. v.* JOE M. GIB-
SON, NEXT FRIEND OF MARY GALBRAITH GIBSON,

and

PRYOR BROWN TRANSFER COMPANY *et al. v.* JOE M. GIBSON.

(*Knoxville.* September Term, 1926.)

Opinion filed November 20, 1926.

1. **DAMAGES.** **Negligence.** **Master and servant.** **Transporting mail.**

The relation of master and servant exists between the driver of a vehicle (motor driven truck), an employee of contractor, carrying mail to and from a post office, a contract existing between the Government and contractor who was to furnish transportation, and providing that the contractor should be accountable in damages to the Government or any person aggrieved, and answerable in damages for the careful and faithful conduct of any person or persons to whom contractor should commit the care, or transportation of mails. (Post, p. 265.)

2. **SAME.** **Same.** **Same.** **Same.** **Supervision by postal department.**

And the fact that mail was to be transported under the supervision of the postmaster of a city, or that he had power to discharge such employee, would not change the relationship. (Post, p. 266.).

Citing: 39 Corpus Juris, p. 5; see 4,   Notes 26-27; Sawyer v. Corse (Va.), 94 Am. Dec., 445.

3. **PUBLIC OFFICER.** **Contractor.** **Employee.** **U. S. Mail.**

The contractor for transportation of mail to and from a post office, is in a sense an agent of the Government, yet he is not a public agent, nor is his employee hired for that purpose. (Post, p. 267.)

Citing: Barker v Chicago P. & St. L. R. Co. (Ill.), 26 L. R. A. (N. S.), 1058; Scott v. Mayor, etc., of Manchester, 2 Hurl & N., 204; Weightman v. Corporation of Washington, 1 Black, 39;

Cases, contra, cited and disapproved: Foster & Metts (Miss.), 30 Am. Rep., 506; Boston Ins. Co. v. Chicago, R. I. & P. R. Co. (Ia.), 59 L. R. A., 796; Bankers' Mutual C. Co. v. Minneapolis, St. P. & S. S. M. Ry. Co. (C. C. A.), 117 Fed. Rep., 434; Hutchins v. Brackett (N. H.), 53 Am. Dec., 248; Conwell v. Voorhees (Ohio), 42 Am. Dec., 206; Story on Agency, pp. 313, 319 n., 321; Shearm & Redf. on Neg., p. 177.

4. PUBLIC OFFICER. Subordinate. Misconduct. Respondeat superior.

With regard to the responsibility of a public officer for the misconduct or negligence of those employed by, or under him, the distinction generally turns upon the question, whether the situation of the inferior is a public officer or private service. In the former case the official superior is not liable for the inferior's acts; in the latter he is. (Post, p. 270.)

Cases cited: Sherman v. Redfield on Negligence, sec. 190; Sawyer v. Corse (Va.), 94 Am. Dec., 445; Central Railroad & Banking Co. v. Lampley (Ala.), 52 Am. Rep., 334; Raisler v. Oliver (Ala.), 38 Am. St. Rep., 213; Barker v. Chicago P. & St. L. R. Co. (Ill.), 26 L. R. A. (N. S.), 1058.

5. AUTOMOBILE. Large trucks. Dangerous instrumentalities.

Large Trucks (motor driven), when operated for business purposes, upon streets of a city, are regarded by the courts as instrumentalities of a dangerous character. (Post, p. 271.)

6. DAMAGES. Remittitur. Supreme Court practice.

Where a remittitur is entered, by requirement of a trial court, upon an appeal and affirmance of the judgment, the Supreme Court will not restore, upon request, the sum remitted, or the original verdict in court below, unless it appears that the trial court has abused its discretion, which in this case is not shown. (Post, p. 272.)

---

*Headnotes 1. United States, 39 Cyc., p. 715 (Anno.); 2. Appeal and Error, 4 C. J., section 2818 (Anno.).

---

FROX KNOX.

---

Appeal in error from Knox Law Court.—HON. A. C. GRIMM, Judge.

JOHNSON & COX, for Pryor Brown Trans. Co.

CATE, SMITH, TATE & LONG, for Joe M. Gibson and Mary Galbraith Gibson.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

These suits were brought against Pryor Brown and Charles J. Brown, doing business under the name and style of Pryor Brown Transfer Company, for injuries sustained by Mary Galbraith Gibson, a minor, in the one case, and for the consequent expense and loss on the part of her father, Joe M. Gibson, in the other case.

The injury resulted from a collision between a mail truck of the Pryor Brown Tranfer Company and a car in which Mary Galbraith Gibson was riding.

The truck of the company was driven at the time by William Jenks. He had been in the employ of the company for some year and a half and was considered a safe driver. The truck was on a regular mail route at the time of the accident, which occurred on the night of May 19, 1923, in the city of Knoxville.

Mary Galbraith Gibson recovered a judgment for $5,000, but was required to enter a *remittitur* of $3,500. The recovery in favor of her father was $600.

Upon an appeal the Court of Appeals dismissed both cases upon the idea that the company and its driver Jenks were agents and officers of the government, en-

gaged in carrying the mail, and that the company was exempt from liability for the negligence of its employee Jenks.

The jury, by their verdict, have settled the controverted issues of fact, and we will dispose of the case upon the theory that the plaintiff below was injured as a result of the negligence of Jenks in handling the company's truck.

On June 22, 1920, the company entered into a written contract with the government for transporting the mails on route No. 42702 in the city of Knoxville for the consideration of $17,990 per annum, beginning July 1, 1920, and ending June 31, 1924. The company was to furnish the necessary screen wagons and transport the mail between the post office and the stations, under the direction of the postmaster of Knoxville.

The fourth section of the contract is as follows:

"To be accountable and answerable in damages to the United States or any person aggrieved, for the faithful performance by the said contractor of all duties and obligations herein assumed, or which are now or may hereafter be imposed upon him by law in this behalf; and, further, to be so answerable and accountable in damages for the careful and faithful conduct of the person or persons who may be employed by said contractor and to whom the said contractor shall commit the care or transportation of the mails, and for the faithful performance of the duties which are or may be by law imposed upon such person or persons in the care or transportation of said mails; and further, that said contractor shall not commit the care or transportation of the mail to any person under eighteen years of age, or any

person undergoing a sentence of imprisonment at hard labor imposed by a court having competent jurisdiction, or to any person who has not satisfied the postmaster or his representative (subject to the approval of the Postmaster General) that he has good moral character and ability to perform the service, has taken the oath prescribed by law, can read and write the English language, and has passed the required examination and furnished satisfactory reference as to his qualifications and fitness.''

By the fifth section the company was required ''to discharge any driver, or other person employed in performing mail service, whenever required by the Postmaster General so to do.''

The company was further required to execute a bond for the faithful performance of the contract, and each member of the company was required to subscribe to the following oath:

''I will faithfully perform all the duties required of me and abstain from everything forbidden by the laws in relation to the establishment of post offices and post roads within the United States and that I will honestly and truly account for and pay over any moneys belonging to the said United States which may come into my possession or control; and I also further swear that I will support the Constitution of the United States.''

Every person handling the mail is required to take this oath, and same was subscribed by Jenks.

Upon this state of facts, and under the authorities, it is manifest that the relationship of master and servant existed between Jenks and the company. Every element of that relationship was present. Jenks was

hired by the company; his compensation was fixed and paid by it; he was under its control and could be discharged by it at pleasure.

The fact that the mail was to be transported under the supervision of the Postmaster at Knoxville, or that he had a right to discharge Jenks, would not change the relationship. 39 Corpus Juris, p. 5, section 4, notes 26-27.

This question is fully discussed in the case of *Sawyer v. Corse* (Va.), 94 Am. Dec., 445.

In this situation, the universal rule is invoked by claimants that, under the doctrine of *respondeat superior,* a master is liable for injury to person or property resulting from the acts of his servant done within the scope of his employment.

On the other hand, counsel for the company insist that even though Jenks be treated as its servant that he was engaged in handling mail and was, therefore, an agency of the government, as was his employers, and the equally well-recognized rule is invoked which exempts a public officer from liability for the acts and defaults of his official subordinates.

The doctrine is thus stated in 1 Am. Lead. Cas. (3 Ed.), 621:

"With regard to the responsibility of a public officer for the misconduct or negligence of those employed by or under him, the distinction generally turns upon the question whether the persons employed are his servants, employed voluntarily or privately and paid by him, and responsible to him, or whether they are his official subordinates, nominated perhaps by him, but officers of the government; in other words, whether the

situation of the inferior is a public officer or private service. In the former case the official superior is not liable for the inferior's acts; in the latter he is."

The foregoing statement is approved by the following authorities: Sherman & Redfield on Negligence, section 180; *Sawyer* v. *Corse,* supra; *Central Railroad & Banking Co.* v. *Lampley* (Ala.), 52 Am. Rep., 334; *Raisler* v. *Oliver* (Ala.), 38 Am. St. Rep., 213; *Barker* v. *Chicago, P. & St. L. R. Co.* (Ill.), 26 L R. A. (N. S.) 1058.

In the last-named case it is said:

"The exemption of public officers from responsibility for the negligence or positive wrongs of their subordinates in the discharge of their public duties arising from consideration of public policy. Competent persons would not be willing to accept positions which imposed upon them liability for torts and wrongs committed by subordinates whom they did not appoint and could not discharge. These considerations do not apply to a corporation undertaking, by contract, to perform work or render service for the government for a compensation to be paid to it and with a view to its own profit, and where its subordinates are employed and paid by it and liable to be dismissed at its pleasure. It is said in *Sawyer* v. *Corse,* supra: 'Such a contractor is in no just and proper sense an officer of the government, and though he may be said to be in a certain sense an agent of the government because he is engaged in working for the government, yet the laborers and others whom he employs under him in the execution of his contract cannot be said to be agents of the government, which does not know them, does not appoint them, does not con-

trol them, does not pay them, and has nothing to do with them . . . He is not such a public agent . . . because he is working for his own profit by fulfilling a contract which he has bound himself to perform and for which he is to receive compensation.' "

Again, in *Sawyer* v. *Corse,* supra, it is said:

"The effort has been made both in England and the United States to extend the application of this principle of exemption so as to embrace every case of a municipal corporation clothed with authority or charged with a duty for the accomplishment of objects of a public nature and for the public benefit. But it has been held that where the authority, though for the accomplishment of objects of a public nature and for the benefit of the public, is one from the exercise of which the corporation derives a profit, or where the duty, though of a public nature and for the public benefit, may fairly be presumed to have been enjoined upon the corporation in consideration of privileges granted to and accepted by it, the exemption does not apply. And the reason is, that in such cases the corporation is not acting merely as an agent of the public and with a view solely to the public benefit, but that in the former it is pursuing its own interest and profit, and in the latter is executing a contract for which it has received a consideration: *Scott* v. *Mayor, etc., of Manchester,* 2 Hurl. & N. 204; *Weightman* v. *Corporation of Washington,* 1 Black, 39."

On the other hand, the following cases hold that the mail contractor and his driver are agents of the government: *Foster* v. *Metts* (Miss.), 30 Am. Rep., 506; *Boston Ins. Co.* v. *Chicago, R. I. & P. R. Co.* (Ia.), 59 L. R.

A., 796; *Bankers' Mutual C. Co.* v. *Minneapolis, St. P. & S. S. M. Ry. Co.* (C. C. A.), 117 Fed. Rep., 434; *Hutchins* v. *Brackett* (N. H.), 53 Am. Dec., 248; *Conwell* v. *Voorhees* (Ohio), 42 Am. Dec., 206.

The reason for such holding is well stated in the first-named case as follows:

"A rider or driver employed by the contractor for carrying the mails is an assistant about the business of the government. Although employed and paid, and liable to be discharged at pleasure by the contractor, the rider or driver is not engaged in the private service of the contractor, but is employed in the public service. *U. S.* v. *Belew,* 2 Brocken, 280.

"A carrier of the mail is required by law to be of a certain age, to take a prescribed oath, is exempted from militia and jury service, and is liable to certain penalties for violations of duty, as well as subject to be discharged from service by any postmaster in a certain contingency. He is a subordinate agent of the government, whose employment is contemplated and provided for by the government in contracting to have the mail carried. Id.

"Contractors for carrying the mail are responsible for their own misfeasances, but not for those of their assistants. The assistants must answer for themselves. The only security for the safe transmission of packages by mail is the safeguards thrown around it by the regulations of the government, which announce that all valuables sent by mail shall be at the risk of the owner. All that the government promises in case of loss of money or other valuables from the mail is to endeavor to recover it and to punish the offender.

"The duty of contractors to carry the mail is to carry it from place to place, subject to the regulations of the post office officials. Their obligation is to the government. They and their assistants are agents of the government, and subject to the rule of law applicable in such cases. Story on Agency, sections 313, 319 n, 321; Shearm. & Redf. on Neg., section 177.

"It is well settled that postmasters are not liable for losses occasioned by the sub-agents, clerks and servants employed under them, unless they are guilty of negligence in not selecting persons of suitable skill, or in not exercising a reasonable superintendence and vigilance over their conduct."

From the foregoing it will be observed that the authorities are divided upon the question as to whether a mail contractor and his carrier are officers of the government. But in all of the decisions cited, with one exception, the courts were dealing with cases of theft or loss of mail through the negligence of the carriers, and were not considering a case like the one here involved, where the instrumentality employed for transporting the mail was selected by the contractor, operated by one of his choosing in the manner directed by him and for his financial gain.

The case may be likened to that of a railroad transporting mail under contract for a valuable consideration. In such case the company is generally held liable for injury to person or property due to the negligence of it servants. The fact that, at the time, it was the agent of the government, engaged in transporting mail, does not exempt it.

This question was raised in *Barker* v. *Chicago, P. & St. L. R. Co.*, supra, where a railway mail clerk was permitted to recover for injuries due to the negligence of the company's servants. In that case the court said:

"The maxim of *respondeat superior* is founded on the principle that he who expects to derive advantage from an act which is done by another for him must answer for any injury which another may sustain from it. We know of no reason why it should not apply here. The employees of the appellant were not public officers or in any official service or employment. They were not employed for the special service of transporting the mails, but were the private servants of appellant, engaged in the work of appellant in the general business of transportation for its benefit and profit, employed by appellant, and subject to be discharged at its pleasure. It does not appear that the servants of the appellant, by whose negligence the injury to appellee is claimed to have occurred, were even incidentally engaged in any way in the transportation of the mails.

"Several cases have been cited which have held that a mail contractor is not liable for the loss of property transmitted by mail and lost through the carelessness of the contractor's servants. (Citing authorities.) These cases proceed upon the theory that mail contractors are public agents, and not responsible for the omissions, negligence, or misfeasance of those employed by them. We think the cases which hold the contrary are supported by the sounder reason. No case has been cited holding that a railroad company is not liable for injury caused to a postal clerk by the negligence of its employees while in the mail car in the performance of

his duties. There are numerous decisions that they are so liable to the same extent as to a passenger for hire.''

In the annotation, beginning on page 517, L. R. A., 1918 E, will be found numerous cases sustaining a recovery in favor of an injured mail clerk due to the negligence of the employees of the company. It is said in those cases that the company owes a higher degree of care to its passengers than to a mail clerk handling mail on the train. In all of those cases the railroad was actually engaged in transporting mail; and, according to the logic of the company in the instant case, it was not liable for injury resulting from the negligence of its employees operating the train, but the courts held otherwise.

Without undertaking to draw a distinction between a case like the one involved and one where mail is lost or stolen, we are unwilling to extend the rule, relied upon by the company, to a case of this kind. These large trucks are instrumentalities of a dangerous character, as has been frequently held by the courts. Quite naturally the mail contractor will employ a carrier as cheaply as possible since the wages of such employee comes out of his pocket. If the contractor is not responsible for the negligent acts of his carrier then the contractor will not be so careful in choosing his drivers.

The reason for the rule exempting public officials from liability for the negligent acts of their subordinates has no application in a case of this kind.

The exemption set forth in the quotation from 1 Am. Lead. Cas., supra, is logical, reasonable and just, and fits a case like the present.

It seems illogical to say that, where a company contracts with a merchant to transport goods from his place of business to the station, and likewise contracts with the government to transport mail from the post office to the station, and uses the same truck and the same driver in both undertakings, it is liable in the first case for the negligence of its driver, but not in the second.

The following excerpt from the opinion in *Sawyer* v. *Corse,* supra, with respect to the contract there involved, likewise applies to the contract in this case, to-wit:

"The terms of the contract between Sawyer and the department indicate clearly the understanding and intention of the parties to it, that the carriers whom Sawyer might employ would be his agents and servants, for whose acts he would be answerable."

For the reasons indicated above, the judgments of the Court of Appeals will be reversed and those of the circuit court affirmed.

Counsel for the original plaintiffs also ask that the $3500 remitted, at the suggestion of the trial court, be restored.

This is only done where it appears that the trial court has abused his discretion, which is not the case here.