CITY OF LAWRENCEBURG, Plaintiff in Error, v. G. N. DYER, Administrator, Defendant in Error.

Middle Section. November 23, 1929.

Petition for Certiorari denied by Supreme Court, April 5, 1930.

494

R. B. Williams, Noble L. Freeman, Morrison & Morrison, of Lawrenceburg, for plaintiff in error.

W. H. Lindsey, of Lawrenceburg, for defendant in error.

DeWITT, J. This cause is before this court upon a second appeal in error. The action was brought on July 2, 1925 against the Board of Commissioners of Lawrenceburg, a municipal corporation (hereinafter referred to as the city, or as the defendant), by G. N. Dyer as administrator of the estate of his son, J. T. Dyer, deceased, to recover damages on account of the death of J. T. Dyer, which it was alleged had resulted from the negligent conduct of the agents and servants of the defendant. G. N. Dyer, administrator is the defendant in error in this court, but for convenience we will refer to him as the plaintiff.

Upon the first trial the plaintiff was awarded by the jury the sum of $8000, but a remittitur of $3000 from the amount of the verdict was suggested and was accepted. Upon the overruling of the motion for a new trial judgment for $5000 was entered. The defendant appealed in error and the judgment was affirmed by this court; but a petition for certiorari was filed in the Supreme Court, the writ was granted, and after hearing argument the Supreme Court in a memorandum opinion by Mr. Justice Chambliss, reversed the

judgment and remanded the cause for a new trial, upon the ground that the trial judge did not fully and properly instruct the jury that it was their duty to determine on all the proof submitted whether or not the location of the accident was clearly a place where the presence of persons was not reasonably to be anticipated; and that, if they found it to be such a place, then the defendant city owed the duty only of not willfully or wantonly injuring the deceased.

Upon a re-trial in the circuit court before the court and a jury, the jury rendered a verdict for the plaintiff for $7750, but the trial judge suggested a remittitur of $1250, which was accepted under protest, and the plaintiff by an assignment of error in this court insists that it was error to suggest the remittitur, that he should have judgment in this court for the full amount awarded by the jury.

The plaintiff in his declaration charges that J. T. Dyer, the deceased, was travelling, as he had the right to do, along a path by the power line, which path was open to the public and was a way which a great many people when travelling on foot would go to the power house and dam located on the creek below, and that in travelling this path leading within a foot of the guy wire, he touched the wire and was instantly killed, and the declaration charges the city with negligence in allowing the current to escape from the transmission wires overhead to this guy wire.

The defendant city filed its four pleas, substantially setting up the following defenses, to-wit:

First, the general issue.

Second, contributory negligence.

Third, that the place where the accident occurred was the private property of the city, and that the city owed the defendant no duty at that place, first, because he was a trespasser, and secondly, because it was so inaccessible and rough and difficult of access that the presence of persons would not reasonably be anticipated at such place.

Fourth, that on account of a violent storm the night before, that if the wires were broken and electricity was escaping, it was on account of the storm, being the act of God, and for which the city was not responsible.

This case has received thorough consideration by this court. The record has been carefully examined, the briefs and arguments of counsel fully considered, and the authorities relied on have been investigated and taken into full consideration. In disposing of the case upon the former appeal in error the opinion of this court was prepared by Presiding Judge Faw. His opinion contains the following statement which we find now to be fully applicable to the

record before us, and which we re-adopt and make a part of this opinion:

"Preliminary to a consideration of the assignments of error, we will state, in brief outline, the main facts which gave rise to this lawsuit. In making this statement, we shall neither confine ourselves to the undisputed facts nor attempt to point out the conflicts in the evidence. The verdict of the jury has settled all such conflicts in favor of the plaintiff, and, in such case, it is our duty, under a long-established rule, to view the evidence in that aspect most favorable to the plaintiff of which it is reasonably susceptible, and discard all countervailing evidence. There is evidence in the record which, with reasonable inferences therefrom, tends to prove the facts we will now state.

"In the early afternoon of June 25, 1925, plaintiff's intestate, J. T. Dyer, was killed by contact with a guy wire charged with electricity, and which wire was a part of the municipal lighting system of the defendant city. At that time and theretofore the city operated a hydro-electric power plant for the generation of electric current, which current was used in part for municipal purposes and in part for sale to the inhabitants of the city of Lawrenceburg and its environs. The city's power house was situated about two miles south of Lawrenceburg, on Shoal creek, and, as a part of its power system, the city maintained two dams across Shoal creek in the vicinity of the power house and transmission lines from the power house to the consumers of electric current in and about Lawrenceburg.

"One of the dams above mentioned was about forty-five feet high and had been built only a few months at the time J. T. Dyer was killed, and the deceased was on his way to the new dam, in company with his cousin, a young man by the name of Clarence Marlow, when he came in contact with the guy wire which caused his death. The deceased and Marlow lived in a distant part of Lawrence county, probably as much as fifteen miles from Lawrenceburg, and on June 25, 1925, while on their way to Lawrenceburg in a Ford car to get some ice, they decided to visit the new dam, which neither of them had ever seen. Their purposed visit to the dam was merely a sightseeing trip.

"The transmission line of defendant left the backwater above the dam in Shoal creek at a point on land belonging to Henry E. Kelsey (but which was rented to and occupied by Will Flatt as tenant of Kelsey) and passed over the land of Kelsey and thence to Lawrenceburg.

"Deceased and Marlow were not familiar with the neighborhood where the new dam was situated and they stopped their

car near Flatt's home (on Kelsey's land) and asked Flatt for information as to the road to the new dam. Flatt informed them that by going back and around some distance they could reach the dam in their car, but that there was a nearer route which they could travel on foot; that they could "go on down the trail to' the creek" and go across the creek in a boat, if the boat was there, but that, if the boat wasn't there, they could walk around the bluff to the dam. Deceased and Marlow thereupon left their car in the road near Flatt's home and walked through a gate (standing open) into and across the pasture lot indicated by Flatt, and were following a path down a rough hillside, and had reached a point about two hundred yards from the road, and about seventy or seventy-five feet from Shoal creek, when they encountered the charged guy wire which electrocuted Dyer.

"The guy wire in question was attached to one of the poles of the transmission line near its top and extended to another pole about forty-five or fifty feet distant from the first mentioned pole. It was attached to the last named pole about two and one-half feet from the ground, and was intended merely to hold the first pole in position, and not to carry a current of electricity.

"Marlow was walking a few feet in front of Dyer, and Marlow's leg brushed the guy wire lightly, whereupon he fell to the ground unconscious. When Marlow regained consciousness Dyer was lying across the guy wire, with the wire beneath and in contact with the front of his body about the waist line and his left hand grasping the wire. Marlow caught the leg of Dyer's trousers and pulled him off the wire, but Dyer died an instant later, after gasping two or three times.

"The electricity generated at defendant's power plant was conducted to Lawrenceburg over high-tension wires carrying a current of twenty-three hundred volts. On a cross-arm near the top of the before-mentioned pole standing near Shoal creek there was a 'strain insulator' to which one of the aforesaid high-tension wires was attached. This 'strain insulator' was defective or damaged, and because of its defective condition the current escaped from the high-tension wire and passed through the strain insulator and a metal bolt to a metal brace which supported the cross-arm, and thence passed to the guy wire whereon plaintiff's intestate was electrocuted."

It is insisted that the court erred in charging the jury as follows:

"In determining whether or not he was killed by an electric current, you will look to the condition of the electric wires, poles, braces, guy wires and appliances at the place where the death

occurred. You will also consider the nature and characteristics of electricity itself as revealed in the proof, and you will also look to the burns and marks, if any, on the body or clothing, and to all the surrounding facts and circumstances revealed in the proof.''

This instruction was correct. The complaint is made that the jury were not instructed also to consider whether or not the deceased's mouth and nose were found to be bloody, it being contended that they were, and that this showed that the deceased could not have been killed by an electric current, but by a blow on the head or concussion. But the trial judge was not requested to charge the jury upon this subject. The rule is that a mere omission or mere meagerness in the charge of the trial judge is not reversible error where no request for proper and accurate instruction was made. Hayes v. Cheatham, 6 Lea, 1; McColgan v. Langford, 6 Lea, 108; Malone v. Searight, 8 Lea, 91; Slattery v. Lea, 11 Lea, 9. However, we do not mean to intimate that had such request been submitted it should have been adopted. The trial judge charged the jury fully, in substance, that the plaintiff, in order to recover, must show by a preponderance of the evidence that the deceased was killed by an electric current, from the city's electric line under such circumstances as to make the city liable. He then told the jury what they must consider in determining whether or not the city was liable. In disposing of the motion for new trial he stated that there was no evidence that the deceased came to his death by a blow. The only testimony relied on as tending to show this as the cause of death was the presence of blood on the mouth and nose, and some testimony tending to negative the presence of burned places on the body of the deceased. There was some evidence as to burned places. Dr. Long, the state prison physician who had witnessed electrocutions, merely said that he had not seen blood on the mouth or nose of a person electrocuted. Dr. Danley did not qualify as an expert as to post mortem symptoms of death by electricity. There was no substantial evidence that the presence of blood on the mouth and nose showed that death resulted from some other cause than electricity.

The trial judge refused to charge the jury, upon request of defendant, as follows:

"Under the law the defendant is permitted to file contradictory pleas—in other words, in one plea the defendant may deny the allegations of the declaration, and in another plea he may confess and avoid, but when such pleas are filed, both of general issue, which is a denial, and also of confession and avoidance, as in the case before you, the law does not presume an admission upon the part of the defendant, and the burden is up-

on the plaintiff to prove by a preponderance of the proof all material allegations of his declaration necessary to make out his case.''

No question was made before the jury as to the right of the city to file inconsistent pleas, as allowed by law. All of the defenses set forth in these pleas were covered in the instructions given. It was not necessary that the instruction requested should be given; that the jury should be instructed that the city had the right to file inconsistent pleas. This right was recognized all through the trial and fully assumed in the instructions given.

It is insisted that ''the honorable court below erred in keeping the jury over from day to day, after the hearing and argument of counsel, and in the meantime using some of them in the trial of other causes, thus giving an opportunity for confusion as to the facts, and for influences from the outside crowd, among whom the members of the jury were mixing and mingling, and opportunity for tampering with the jury.''

It appears that the arguments of counsel were delivered to the jury on the morning of October 2, 1928, concluding about noon; that the jury were respited, under proper instructions from the court, until the next morning, when the charge of the court was given to the jury; that in the afternoon of October 2nd one misdemeanor case and one felony case were tried before the same jurors, who rendered verdicts in said cases. No objection was made by any of the counsel in the instant case. No motion for mistrial was made on account of it. No evidence was offered that any juror had been tampered with or any influence exerted from the outside crowd, or that the jurors were rendered less able to remember the testimony or render an intelligent and honest verdict. If this was an irregularity, objection should have been made at the proper time in the trial court, and in the absence of objection, it must be considered as waived. Hobbs v. State, 121 Tenn., 413, 118 S. W., 262. There is no evidence that it affected the verdict of the jury. See Ch. 32, Acts of 1911, Shann. Ann. Code, sec. 6351a1; Harness v. State, 126 Tenn., 365, 149 S. W., 911.

It is insisted that the trial judge did not give to the jury a full and fair charge upon the subject of contributory negligence.

The following is that part of his charge given upon this subject:

''It was the duty of J. T. Dyer to exercise ordinary care and prudence for his own safety, and if he failed to do so, and this negligence on his part was the proximate cause of his death or proximately contributed to bring it about, then the plaintiff could not recover anything, but if he was negligent, but his negligence only remotely contributed to bring about the death that would not bar a recovery, but must be taken into consideration

by you in mitigation or lessening the damages you would otherwise allow."

Thus the jury were instructed as to the correct rules of contributory negligence. The point made is that it was too limited; that it was partial and isolated from the instructions given upon the subject of negligence of the defendant and its consequences. We are unable to sustain this insistence. This instruction was given in an orderly sequence. Being the last part of the instructions given upon the subject of negligence it would be likely to be more fresh in the minds of the jurors; and therefore it cannot be viewed as having not received the due measure of treatment in the charge. There was no substantial evidence of contributory negligence on the part of the deceased. There is no evidence that he knew that the guy wire was charged with electricity. His companion, Marlow, testified that when he was shocked and fell unconscious he called to the deceased, "Hey, Tom." He said that he did not know whether he said this before or after he came in contact with the wire; but afterward he said that his saying this was the last thing that he remembered, and he also said that he was not conscious at the time he called thus to Dyer. Dyer was walking four or five steps behind Marlow, and at the point where his body was found the slight path along which they were walking ran very close to the guy wire. The testimony of Marlow did not tend to show that Dyer had a warning from him in time to avoid injury or death. There was, therefore, no substantial testimony upon which to found such instructions as to contributory negligence as were embodied in request No. 8 submitted in behalf of the defendant. The jury could not have failed to understand the rules set forth in the above quoted portion of the charge, nor the application of them if facts were shown to which they were applicable.

It is insisted that the trial judge erred in the beginning of his charge by stating that the defendant denied its ownership and operation of the power plant and denied that J. T. Dyer was on the day of the casualty at a point at or near the right of way of the city used for the transmission lines. The contention made is that thus it was erroneously made to appear to the jury that these were issues for them to decide when the city did not deny any of these things; that it must have made the impression that the city was showing bad faith from the start and that the plaintiff "is stoutly and courageously making the fight and sustaining these essential contentions against the cringing corporation." It is said in the brief of counsel that this tended to prejudice the minds of the jury against the defendant city. In order to dispose properly of these contentions it is necessary to set forth the first part of the charge, containing the instructions complained of. It is as follows:

"Gentlemen of the jury: In this case the plaintiff sues the defendant, city, to recover damages for the death of his intestate, J. T. Dyer.

"The defendant by proper pleas denies the right of the plaintiff to recover anything in this case, therefore the burden is upon the plaintiff to make out his case by a preponderance of the evidence. By preponderance of evidence is not meant the testimony of a greater number of witnesses but the greater weight of the testimony. In this case it is insisted by the plaintiff that the defendant city is the owner of a certain electrical generating plant, that said plant generates electrical power used by the city and its patrons. He insists that its power plant is located on Shoal creek where its electricity is generated and transmitted to the city and is distributed to users there. He contends the defendant was distributing electricity over its transmission lines to the city on or about June 25, 1925. He insists that on said day J. T. Dyer was at a point on or near the right of way of the city used for the transmission lines above referred to. He insists that while J. T. Dyer was walking along near the line and poles of said city's transmission lines that he came in contact with a certain guy wire used to brace or sustain one of the poles of the city's transmission lines, that said guy wire was wrongfully charged with a powerful and deadly current of electricity, that through and by means of touching of said guy wire the electrical current passed through the body of the said J. T. Dyer and killed him. The plaintiff insists that the negligence of said city was the direct and proximate cause of the death of the said Dyer as is shown in the two counts of plaintiff's declaration which will be handed to you herewith for your consideration.

"The defendant denies the contentions of the plaintiff and denies the right of the plaintiff to recover anything in this case. It denies that it or its agents or servants has in any way been careless or negligent."

It will be noticed that the latter part of the language thus quoted embodies contentions which were denied and denied strenuously. All through the trial of the case there was no question made as to the ownership and operation of the power line by the city, and as to the presence of J. T. Dyer near the line and poles of the transmission line. We do not see how the jury could have been misled by this language or could have misunderstood the position taken by the defendant. The trial judge in these opening sentences of his charge was simply stating the substance of the declaration and showing that under the plea of not guilty the city was traversing the statements made in the declaration. We do not think that there was error in these in-

structions or that they tended to prejudice the minds of the jury. We must assume that the jury were reasonable men and reasonable men would certainly not misunderstand these instructions. In the remainder of the charge the ownership and operation of a power line by the city was assumed as undisputed, as also the presence of the deceased at that place when the injury occurred.

The defense was strenuously made on the trial below, and is made here, that the plaintiff has no right to recover because the deceased was a trespasser, was where his presence was not reasonably to be anticipated, and this being true, the city did not violate its sole duty to him not willfully or wantonly to injure him. It is not contended that there was any wanton or willful injury. These propositions are presented in five assignments of error as to the instructions given and an assignment that the court erred in refusing to grant the motion of defendant for peremptory instructions, made at the close of all the testimony.

In May, 1924, Kelsey and his wife conveyed to the city of Lawrenceburg so much of the land as would be covered by the pond made by the dam in the creek, describing the land by metes and bounds; and also "the right of way and so much land as is necessary across any part of the above described land that may be necessary and needed by said city to construct, repair and maintain a power line to and from said dam to any point in the City of Lawrenceburg, and Board of Commissioners of the City of Lawrenceburg, in Tennessee, and any future board and successors of said present board, may desire and wish, and said line to be located at the option of said city, and by its authority, but to be located within the next eighteen months, dating from this deed. And also, the right to a sixteen foot roadway over any part of said land, and so much land across any part of said land, or all of same, sixteen feet wide, for a roadway passing from any point entering upon said land, or any part thereof, going down to Shoal creek, and the right of ingress and egress as to said power line and maintenance of same after constructed." The deed also contained a covenant not to interfere with the power line.

In the operation of its power plant and lighting system, the city was performing a private, and not a governmental function, and, under the rule of respondeat superior, it was liable for negligence of its officers or employees in the maintenance of its lighting system. Saulman v. City of Nashville, 131 Tenn., 427, 175 S. W., 532, L. R. A., 1915E, 316, Ann. Cas., 1916C, 1254.

It will be observed that no particular location or width of right of way across the land was specified in the aforesaid deed. Kelsey, or any one acting by his authority, therefore, had the right to use said land in any manner and to any extent that did not interfere with the lawful and proper use by the city of its right of way. Guinn

v. Delaware, etc., Telephone Co., 72 N. J. L., 276, 111 Am. St. Rep., 668:

Mr. Flatt, the tenant of Kelsey, testified that the two young men came to his house in a car; that Marlow asked him the way to the power house. He said:

"I·told him that he would have to go back.to the Jackson highway and go down about a mile, if he went in his car, to the power house, and turn to the right. He says, 'Don't this line run to the power house?' I says, 'Yes. If you go down that way you will have to go afoot.' " He was asked and answered:

"Q. They had your perfect permission to pass through the gate? A. Either way they wanted to go.

"Q. And they did go through the gate and down the path? A. Yes, sir."

On cross-examination he said: "I didn't tell them which way to go. They just suited themselves about that."

Marlow testified that Flatt told him that they could go afoot down the path which led along the transmission line.

This evidence supports the conclusion that they were not trespassers as to the owner of the land or his tenant. The insistence is made that the city owned a strip of land covered by the transmission line, and that Flatt had no right to permit anyone to go on this strip of land. We do not think that the city, under its deed, owned the fee,. but merely an easement for the transmission line, and therefore the jury might conclude that the deceased was not a trespasser but a licensee. This, however, does not conclude the question whether or not there was evidence that the deceased was where he might reasonably have been anticipated by the city to be when he was fatally injured. If there is no such evidence, the city is not liable. In the opinion of Mr. Justice Chambliss, upon the former appeal of this case, it is said:

"Recognizing as fundamental and general the principle that a company operating high-powered electric wires is under obligation to keep them in safe condition, if reasonably chargeable with knowledge, or if in the exercise of reasonable prudence bound to anticipate that people may lawfully come in close proximity thereto for purposes of either business or pleasure, the New York Court of Appeals expressly held, in Braun v. Buffalo Gen. Elec. Co., 200 N. Y., 484, 21 Am. & Eng. Dec. Ann., 370, that this was a question for the jury. And 9 R. C. L., 1227, supports with many authorities its text, to the effect that questions of negligence in the maintenance of such wires are for the jury 'unless the negligence is so clear upon.the evidence that intelligent minds cannot form different conclusions upon it.' "

There is substantial evidence that, although the transmission line went from near the gate down a ravine which was steep and in places rocky, with much large and small growth, there was a path, crooked in places, leading down to a bluff about ten feet high near the water. This was the path which Flatt pointed out to the young men and which they followed. Persons could go down the bluff to the water. The path is described by several witnesses as a very plain path showing that it had been traveled "a good deal." It ran so close to the second pole that a traveler would be likely to come into contact with the guy wire. There is much testimony that people were accustomed to go along this path down to the water, to go in swimming and some to use a boat which was kept near there. There is no positive evidence that this was known to any of the officials, agents, or servants, of the City of Lawrenceburg. It was stated by some of the employees of the city that the path was made, and intended to be used, solely by them in the construction, inspection and maintenance of the transmission line. We are of the opinion that there was enough evidence for the case to go to the jury upon the issue as to reasonable anticipation that persons might go along that path, and that we are concluded by their verdict.

In the extract from the prior opinion prepared by Presiding Judge Faw, supra, is a statement, based upon substantial evidence, showing how the deceased was electrocuted as the result of the defective condition of the transmission line. It is contended that this condition was due to a storm occurring the previous night and that the city had not had a reasonable time to discover and repair the damage. But there is evidence that the defective condition had existed for several weeks; that escaping current had burned down a cedar tree to which a guy wire was attached which led from the same pole from which the guy wire led on which the deceased fell; that there were other evidences of burns on a tree and on leaves and grass due to escaping current. Some months before this time a young man named William Bashor, while hunting at this place, came into contact with one of these guy wires and was knocked down by the shock of electricity escaping therefrom. He notified the city's watchman at the power house of this occurrence. His companion, Rigsby, testified that the guy wire was the one fastened to the cedar tree, which was then about one-third burned; and that he saw sparks and smoke around the cedar tree.

There is some evidence that upon the left hand and upon the left side of the body of the deceased there were burned places.

There is evidence that the body was found by Marlow leaning upon the wire near the pole No. 2, the left hand upon the wire; that the wire was fastened to this pole about two and one-half feet from the ground. Therefore, the jury could reasonably infer that Dyer,

while walking on the path very close to the wire, without knowing that it was charged, came into contact with it, was drawn by the current over it and electrocuted.

In view of all this evidence the issues of fact were properly submitted to the jury, and the circuit judge did not err in overruling the motion for peremptory instructions.

It is insisted that the circuit judge erred in charging the jury as follows:

"Electricity is dangerous when not properly controlled, and it is the duty of those in charge of deadly electrical currents to exercise ordinary care and prudence to prevent electricity from escaping on to other objects where they may constitute danger to persons at places where the presence of persons was reasonably to be anticipated. Now, if in this case the defendant city failed to exercise ordinary care and prudence at such a place, and by such failure the current passed from the transmission line to the guy wire where J. T. Dyer came in contact with it, then the city would be liable in damages."

The objection made is two-fold:

First, it ignores the proposition that Dyer may have been a trespasser under the law and if so there was no obligation on the city to keep the premises in a safe condition for Dyer's occupancy, and if so the city would not be liable in damages.

The court did charge the jury very fully upon the issue whether or not the presence of persons was reasonably to be anticipated at the place of injury.

Second, objection is made that this instruction ignores the rule as to the effect of proximate contributory negligence. We have heretofore set forth our opinion that the court properly and adequately charged the jury as to the duty of Dyer to exercise ordinary care and prudence for his own safety, and if he was guilty of negligence that proximately contributed to his death the plaintiff could not recover anything.

Taking the whole charge together we find that the jury were fully instructed upon the very propositions which the plaintiff in error insists should have been added as qualifications to the instructions above quoted. We do not think that the city has not been fairly treated as contended in its behalf.

It is insisted that the circuit judge erred in charging the jury as follows:

"It is insisted on the part of the plaintiff that even though the place where the accident occurred was not in or upon a public highway or street, that nevertheless it was a place where the presence of persons was reasonably to be anticipated, and that therefore it was the duty of the city to exercise ordinary

care and prudence to avoid injuring persons, taking into consideration the dangerous qualities and characteristics of the electric current being transmitted.

"In determining whether it was a place where persons were reasonably to be anticipated you will look to see whether there was a path or pass-way where the death occurred, whether or not people generally or frequently passed along that way for pleasure or business, whether there was a path there or not, and to all the facts and circumstances."

The objection made is that these instructions were partial and unfair, constituting a one-sided argument in favor of the plaintiff. We see no error in these instructions, and if they were merely good so far as they went, but inadequate, and if the trial judge should have told the jury to consider whether or not the power line was at an inaccessible and dangerous place in proximity to bluffs and precipitous surroundings, etc., the trial judge should have been requested so to charge the jury. The rule must here be applied that the mere omission is insufficient as a basis for reversal where the trial judge was not given an opportunity to supply it by proper request as hereinbefore set forth.

However, the very things which counsel insists were erroneously omitted were in our opinion reasonably comprehended within the general language of that portion of the charge just quoted. The attention of the jury was several times called to the rule that in order to find for the plaintiff it was necessary to find that the deceased came to his death at a place where the presence of persons was reasonably to be anticipated. We think that the instructions given were clear and sufficient to enable the jury to understand that they must look not only to the physical things mentioned by the Circuit Judge, but to all other physical conditions at and around the place where the deceased met his death.

It is insisted that the court erred in charging the jury as follows:

"The said J. T. Dyer in walking upon the lands of the said Kelsey, either along the line of the transmission line or elsewhere and not interfering with said transmission line or rights of the city, even though he might be a trespasser upon the land of said Kelsey, would not be a trespasser as to the city."

It is insisted that this was a substantial instruction that Dyer was not a trespasser. This was said by the trial judge following a statement of the terms of the deed to the City of Lawrenceburg under which it acquired the right to erect and maintain the power line; in which the court also said that the city under the terms of the deed would be required to construct its line upon plans in reasonable accord with the state of the science of that time and so maintain it, but the said J. T. Dyer not being a party to said contract or deed

could have none of the benefits of its provision, thus the court used the language above quoted and said further: "In other words, a person could be a trespasser as to Kelsey when not a trespasser upon the rights of the city. The city could have no advantage of protection merely because a person was trespassing exclusively on Kelsey's land or rights. Dyer would not be a trespasser as to Kelsey for Kelsey gave him permission to go upon his land."

We cannot see any error in these instructions. They must be taken and considered together. The court simply said, in other language, that if Dyer did not interfere with the transmission line or the rights of the city he would not be a trespasser as to the city, even though he might be a trespasser as to Kelsey. The court therefore did not tell the jury that Dyer was not a trespasser as to the city. What he did say was said in a conditional sense, that Dyer would not be a trespasser as to the city if he did not interfere with the transmission line or rights of the city. The court made a proper distinction between trespass upon the rights of the owner of the land and trespass upon the rights of the city. This did not violate the ruling of the Supreme Court that the defendant city was entitled to the full, fair and accurate charge of the law applicable to the insistence that the deceased was where his presence could not reasonably have been anticipated by the defendant.

We deem it unnecessary to go into further discussion of this question of trespass. We are content with the soundness of the instructions given by the Circuit Judge upon this subject. In 56 A. L. R., beginning at page 1021 there is an elaborate series of annotations upon the subject of liability of one maintaining high tension electric wires over private property of another for injuries thereby inflicted. See also, 9 R. C. L., 1207 and volume 4 of permanent supplement thereto, page 2615, and cases cited; Guinn v. Delaware & Atlantic Telephone Co., 72 N. J. L., 276, 62 Atl., 412, 111 Am. St. Rep., 668, in which it was said very clearly:

"The test of the defendant's liability to a particular person is whether injury to him ought reasonably to have been anticipated. In the present case the guy wire was stretched over an open field, across which people were accustomed to travel without objection by the landowner. The adjoining field was used as a ball ground. It was probable that if the guy wire broke some one crossing the field would come in contact with it. That whoever did so was a trespasser or a bare licensee as against the landowner could not avail the defendant. If a bare licensee he would still be there lawfully. If a trespasser his wrong would be against the landowner alone, not a public wrong nor a wrong to the defendant.

"The general rule is that a person is liable for those results of his negligence which are reasonably to be anticipated; the exemption of a landowner from liability as to trespassers and licensees is necessary to secure him the beneficial use of his land, but no reason exists for extending this exemption to the case where the rights of the defendant have not been interfered with."

For reasons heretofore mentioned we are unable to agree with the proposition that the deceased at the time of the accident was walking on land owned by the city and therefore a trespasser as to the city. The case differs from the case of Lucas v. Bishop, 115 Lea, 165. In that case there was a grant of land containing a spring, not merely the use of the spring but the spring itself, and the Supreme Court held that it carried the land which the spring occupied. In this case there was granted merely a right of way over the land for the erection and maintenance of the power line.

It is insisted that the court erred in not following the instructions of the Supreme Court on a remand of the case for a new trial. This is based upon the proposition that the defendant city did not have a full and accurate charge upon the question of trespass and the question of reasonable anticipation of the presence of persons at the locality of the accident. We have heretofore set forth the reasons why we think that such a charge was given and that the city has not been prejudiced by the instructions given by the trial judge.

It results that all of the assignments of error filed in behalf of the plaintiff in error must be overruled.

The plaintiff administrator appealed in error from the action of the Circuit Judge in ordering a remittitur of $1250. The reasons for this reduction from the amount awarded by the jury were not stated by the Circuit Judge. In considering the reasonableness of a verdict on appeal the appellate court will give great weight to the action of the trial court in directing a remittitur. Nashville Ry. & Light Co. v. Harrison, 5 Tenn. App., 22; Baker v. Bates, 4 Hig., 175. And where a remittitur is entered, by requirement of the trial court, upon an appeal and affirmance of the judgment, the appellate court will not restore, upon request the sum remitted, or the original verdict in the court below, unless it appears that the trial court has abused its discretion. Brown Transfer Co. v. Gibson, 154 Tenn., 260, 290 S. W., 33.

The Circuit Judge heard all of the witnesses testify, and he could only approve a judgment to the extent of $6500. We are unable to conclude that he abused his discretion. The law prescribes no exact standard by which the compensation to be awarded in such a case shall be measured. "Full compensation is impossible in the ab-

stract, and different individuals will vary in their estimate of the sum which will be a just pecuniary compensation." 8 R. C. L., 673; Saucier v. Roberts, 2 Tenn. App., 211.

The judgment of the circuit court is affirmed. Judgment will be entered in this court in favor of G. N. Dyer, administrator, against the Board of Commissioners of Lawrenceburg, for the sum of $6500, with interest from November 10, 1928, the date of the judgment in the circuit court, and costs. The costs of this appeal will be adjudged against said municipal corporation and the sureties on its appeal bond.

Faw, P. J., and Crownover, J., concur.