Robert F. SMITH, Commissioner, Tennessee Department of Transportation, Petitioner,

v.

Madison SHELTON and wife, Ollie Shelton, Respondents.

Supreme Court of Tennessee.

July 31, 1978.

Brooks McLemore, Jr., Atty. Gen., Robert J. Ames, Asst. Atty. Gen., Nashville, Ray Hollis, Special Trial Counsel, Waynesboro, for petitioner.

W. A. Harwell, Harwell, Bottoms & Plant, Lawrenceburg, for respondents.

## OPINION

FONES, Justice.

We granted certiorari in this condemnation case to resolve a conflict of opinion among the members and sections of the Court of Appeals on the question of the proper scope of review to be applied by the Court of Appeals where, after a jury verdict for plaintiff, the trial judge suggests an additur.

What is said herein with respect to the scope of review of additurs applies to remittiturs, and vice versa. The cases cited herein prior to 1969 involve remittiturs, but insofar as the scope of review is concerned, would dictate the same results when applied to additurs. Remittiturs were authorized by case law in 1858 but additurs were first authorized by Chapter 137, Acts of 1969.

The older view, supported by a substantial majority of the cases, is that the Court of Appeals will not disturb the trial judge's use of a remittitur, unless it finds an abuse of discretion.

The other view will be referred to as the de novo standard of review. It is of recent origin and has not attained uniformity of expression in the cases that are said to have applied it.

Although remittiturs were judicially authorized in Tennessee long before the turn of the century, we have not been able to find any cases wherein a standard of appellate review of a trial judge's use of remittitur was articulated prior to 1926. In *Pryor Brown Transfer Co. v. Gibson,* 154 Tenn. 260, 290 S.W. 33 (1926), the Court, responding to plaintiff's contention that the amount remitted by the trial judge should be restored, said the following:

> "This is only done where it appears that the trial court has abused his discretion, which is not the case here." 154 Tenn. at 272, 290 S.W. at 36.

No citation of authority was given and no rationale discussed.

Many cases since 1926 have referred to the role of the Court of Appeals in passing on the trial judge's use of remittitur, as limited to a finding of abuse of discretion, also without discussion of the basis for the rule.[1]

The origin of the de novo review rule cannot be pinpointed with precision. The majority opinion in the instant case represents the strongest advocacy for that school of thought and relies upon *Speight v. Newport,* 503 S.W.2d 202 (Tenn.App.1973); *Jones v. Cocke County,* 61 Tenn.App. 555, 456 S.W.2d 665 (1970); *Murphy Truck Lines v. Brown,* 203 Tenn. 414, 313 S.W.2d 440 (1958); and the verbiage of the remittitur and additur statutes.

Our research has convinced us that neither of these views provides the proper guidelines for appellate review where the trial judge has disagreed with the jury on the amount that a plaintiff is entitled to recover.

---

1. *Clinchfield R. R. v. Forbes,* 57 Tenn.App. 174, 417 S.W.2d 210 (1966); *Wilson v. Cook Mfg. Co.,* 56 Tenn.App. 129, 405 S.W.2d 584 (1966); *Dixie Feed & Seed Co. v. Byrd,* 52 Tenn.App. 619, 376 S.W.2d 745 (1963); *Templeton v. Quarles,* 52 Tenn.App. 419, 374 S.W.2d 654 (1963); *Stark v. Yost,* 47 Tenn.App. 28, 334 S.W.2d 954 (1959); *Graham v. Smith,* 46 Tenn. App. 549, 330 S.W.2d 573 (1959); *Spence v. Carne,* 40 Tenn.App. 580, 292 S.W.2d 438 (1954); *Monday v. Millsaps,* 37 Tenn.App. 371, 264 S.W.2d 6 (1953); *Olson v. Sharpe,* 36 Tenn. App. 557, 259 S.W.2d 867 (1953); *International Harvester Co. v. Sartain,* 32 Tenn.App. 425, 222 S.W.2d 854 (1948); *Yellow Bus Line v. Brenner,* 31 Tenn.App. 209, 213 S.W.2d 626 (1948); *Atlantic Coast Line R. R. v. Meeks,* 30 Tenn. App. 520, 208 S.W.2d 355 (1947); *Town of Clinton v. Davis,* 27 Tenn.App. 29, 177 S.W.2d 848 (1943); *City of Lawrenceburg v. Dyer,* 11 Tenn.App. 493 (1929).

We agree with the dissenting member of the Court of Appeals that the abuse of discretion standard of review has obviously meant different things to different courts. A de novo standard of review, if applied to remittiturs and additurs, would sanction the substitution of judicial judgment for that of the jury in assessing damages, an inappropriate and legally untenable result.

## I.

■ In *Speight v. Newport, supra,* also a condemnation case, the Court of Appeals observed that the process of reasoning applied to remittiturs could be applied in reverse to additurs, quoted the abuse of discretion rule from a case involving a remittitur, and concluded that there was no reason why it should not apply to additurs. At that point the opinion appears to have unequivocally endorsed the abuse of discretion rule. But, prior to an analysis of the proof of damages, the Court continued with a process of reasoning based upon the additur statute that resulted in the conclusion that the trial judge's suggestion of an additur was reviewable pursuant to T.C.A. § 27–303, a de novo review. The reasoning was that when the trial judge suggested an additur, the State (in the posture of a defendant, in other than condemnation cases) had two choices, (1) a new trial or (2) accept the additur under protest and appeal; that rejection of the new trial amounted to a waiver of the right to try the issue again before a jury and a fortiori, "the question of additur became one which was decided by the trial Judge without intervention of a jury and this action is reviewed here pursuant to T.C.A. § 27–303, with the usual presumption that the judgment of the trial Court is correct unless the evidence preponderates against it." 503 S.W.2d at 205. We do not agree that the election to accept a remittitur or an additur rather than a new trial results in transforming the case on appeal to a non-jury case reviewable pursuant to T.C.A. § 27–303. That section is expressly limited to cases tried without the intervention of a jury, from which a simple appeal lies. *Speight* and the instant case were tried with the intervention of a jury and the appeal is expressly governed by T.C.A. § 27–308, being in the nature of a writ of error. Neither the trial judge's disagreement with the amount of the jury verdict, nor acceptance of a remittitur or additur rather than a new trial, provides a basis for the application of T.C.A. § 27–303 and we expressly overrule that holding in *Speight.*

In *Murphy Truck Lines v. Brown,* 203 Tenn. 414, 313 S.W.2d 440 (1958), a jury verdict of $25,000 was reduced to $12,500 by the trial judge. Plaintiff and defendant appealed, and the Court of Appeals in response to plaintiff's insistence that the jury verdict be restored held that the trial judge's remittitur was excessive but that a $5,000 reduction of the jury verdict was proper. The majority opinion of the Court of Appeals in the instant case implicitly regards the following quote as supportive of a de novo review:

"The clear legislative intent, as reflected in the foregoing Sections of the Code, was to confer upon the appellate courts full power and authority to revise and correct all errors consistent with recognized rules of appellate practice and procedure." 313 S.W.2d at 443.

The above quote was a portion of the *Brown* Court's response to the question of whether or not the Court of Appeals had the *authority* to change the amount of the remittitur suggested by the trial judge. Later, responding to plaintiff's contention that it was error for the Court of Appeals not to reinstate the jury's verdict, the Court said this:

"While there is an expression in *Lambert Bros. v. Larkins,* supra [Tenn., 296 S.W.2d 353], which suggests that this was its duty pursuant to its right of revision to correct errors, we feel that the authority to do so, as well as to correct other errors, rests within the sound discretion of the court. It was not the intention of the Legislature to set up an arbitrary rule to be followed by the courts in every case. Any such attempt to limit the judgment of the courts would come close to the

exercise of a judicial function." 313 S.W.2d at 443–444.

We do not interpret *Brown* as specifically dealing with the appropriate scope of review of remittiturs and additurs. The Court appears to have restricted the opinion to the *power* of the Court of Appeals to select a figure different from that awarded by the jury or the trial judge.

The majority opinion in the instant case also relies on the language of the remittitur and additur statutes, to wit, "if the Court of Appeals is of the opinion that . . ." as authorizing a de novo review. We do not find any language in the statutes prescribing a scope of review of the action of the trial judge in granting remittiturs or additurs. When the Legislature intends to address the scope of review applicable to a particular type of proceeding, it knows how to express it. For example, see T.C.A. § 4–523, § 27–303, § 27–408 and § 27–911.

We think the legislative purpose motivating its very limited entry into the remittitur and additur aspects of a civil suit can be clearly seen from the status of the case law at the time of passage of the three acts.

The first remittitur statute became law on April 6, 1911, Chapter 29, Acts of 1911. Prior to its enactment, as heretofore noted, trial judges were authorized to reduce jury verdicts as an alternative to granting a new trial. See *Branch v. Bass*, 37 Tenn. 366 (1858). However, a plaintiff could not accept the remittitur under protest and appeal. *Massadillo v. Railway Co.*, 89 Tenn. 661, 15 S.W. 445 (1891). If he accepted the reduced amount, rather than a new trial, judgment was entered for that amount, from which plaintiff could not appeal. Plaintiffs were given the right to appeal for the first time by Chapter 29, Acts of 1911.

In *Lambert Bros. v. Larkins*, 200 Tenn. 674, 296 S.W.2d 353 (1955), the trial judge remitted $5,000 of a $20,000 jury verdict and the Court of Appeals affirmed. Defendant's petition for certiorari, seeking a further reduction of the award was granted, but the majority of the Court affirmed the Court of Appeals. The majority of the Court did not discuss the facts and stated

the applicable rule to be that, in the absence of a corrupt verdict, the concurrence of the two lower courts as to the amount of damages, if supported by material evidence, would not be disturbed by the Supreme Court. The majority relied upon *Koehn v. Hooper*, 193 Tenn. 417, 246 S.W.2d 68 (1951), and some of the language in T.C.A. § 27–119. Mr. Justice Swepston, dissenting, objected to what he regarded as an overly rigid statement of the concurrence rule and factually found no material evidence to support the award at the figure of $15,000. Mr. Justice Swepston reached the conclusion that the Act of 1911 was enacted for the purpose of permitting a plaintiff to accept a remittitur under protest and appeal and that it had no relevance or application to a defendant's appeal. He reasoned as follows:

"As the law stood before the enactment of sections 1 and 2 of Chapter 29, Acts of 1911, if the Trial Judge thought that the verdict was excessive he could only suggest that the plaintiff make a remittitur; if the plaintiff made the remittitur, then judgment was entered for the lesser amount and, so far as the plaintiff was concerned, that ended the lawsuit with no right of appeal by the plaintiff; the Trial Judge, however, could not require the plaintiff to make a remittitur and if the plaintiff refused to do so, then the only thing the Trial Judge could do was to grant a new trial.

"See the cases cited in *Railroad Co. v. Roberts*, 113 Tenn. 488, on page 494, 82 S.W. 314, on page 315, 67 L.R.A. 495, decided in 1904.

"The purpose, therefore, of Chapter 29, Acts of 1911, sections 1 and 2, was to change this rule so that whenever the verdict in the Trial Court's opinion, was so excessive as to indicate passion, prejudice, corruption, partiality or unaccountable caprice on the part of the jury, and the Trial Judge for that reason suggested a remittitur, the plaintiff by said statutes was allowed to accept the suggestion of the remittitur under protest and then appeal to the Court of Civil Appeals at that time . . . . .

"Those Code sections, however, have no reference to the rights of the defendant. Again referring to *Railroad Co. v. Roberts*, supra, 113 Tenn. at page 494, 82 S.W. at page 315, the opinion cites *Louisville & N. R. Co. v. Garrett*, 76 Tenn. 438; *Nashville, C. & St. L. R. Co. v. Foster*, 78 Tenn. 351, and *Tennessee Coal & R. Co. v. Roddy*, 85 Tenn. 400, 5 S.W. 286, for the law before the Act of 1911, which was that even though the remittitur was suggested by the Trial Judge to the plaintiff, the *defendant* could not be required to abandon or waive his right of appeal as a condition to acceptance by the plaintiff. It is perfectly obvious that this is still the law and is not affected in the least by the Act of 1911, supra." 296 S.W.2d at 355–356.

We agree with the above-quoted portion of the dissenting opinion. It does not run counter to the majority opinion, but if it should be said to do so, we have no hesitancy in overruling so much of *Larkins* as may be in conflict therewith, because, in our opinion, the case law and the language of the Act itself support the conclusions reached by Mr. Justice Swepston.

The 1949 amendment to the remittitur statutes was clearly for the sole purpose of permitting plaintiffs to accept under protest and appeal where the trial judge suggested a remittitur on the grounds of excessiveness as well as on the grounds of passion, prejudice, corruption, partiality or unaccountable caprice. *Ezell v. Post Sign Co.*, 30 Tenn.App. 256, 205 S.W.2d 13 (1947) held that an acceptance of a remittitur by plaintiff where the trial judge held the verdict to be excessive only, could not be reviewed on appeal; that the remittitur statutes authorized appeal only if the verdict was found to be so excessive as to indicate passion, prejudice, partiality or caprice.

"In all other cases the agreement of plaintiff to accept the remittitur has the effect of an agreed order on the question of the amount of the judgment." 30 Tenn.App. at 262, 205 S.W.2d at 15.

*Waller v. Skelton*, 186 Tenn. 433, 211 S.W.2d 445, a 1948 case, was to the same effect and the 1949 amendment followed shortly thereafter. T.C.A. §§ 27–118, 119.

By Chapter 137, Acts of 1969, and Chapter 590, Acts of 1970, the Legislature, in authorizing trial judges to grant additurs for the first time, granted defendants the identical right of acceptance under protest and appeal that the remittitur statutes had given to plaintiffs. T.C.A. § 20–1330.

■ It is our opinion that the remittitur and additur statutes were enacted for the purpose of giving the plaintiff, in the case of remittiturs, and the defendant, in the case of additurs, the right to accept, under protest, and appeal, a right that had been denied those respective classes of litigants by case law prior to the enactment of such statutes. The subject statutes make no reference whatever to the right of a defendant, in case of remittitur, to appeal and contest the inadequacy of the remittitur or the right of a plaintiff to appeal and contest the inadequacy of an additur, both of which rights unquestionably exist and are frequently pursued simultaneously with the opposite party's appeal protesting any remittitur or additur. The scope of review must be the same for both sides of the same lawsuit. It would obviously be inappropriate to read into a legislative act, limited to plaintiff's right to appeal, an intention to prescribe a scope of review governing all parties (and vice versa, in the instance of the additur act).

Finding no express statutory language and no legislative intent or purpose to impose a standard of review upon the appellate courts, it follows that the issue is controlled entirely by case law.

But for the disagreement between the trial judge and the jury over the amount of plaintiff's recovery, review would be limited to a finding of any material evidence in support of the jury's verdict. An essential element of the material evidence scope of review of jury cases is the approval of the verdict by the trial judge, as thirteenth juror. In the cases under discussion, the trial judge, as thirteenth juror, has ap-

proved the jury verdict in all respects, except for the amount of the award, and all aspects of the case, except that feature, remain subject to the material evidence scope of review. Obviously, remittitur—additur cases do not fit the mold of non-jury cases or jury cases fully concurred in by the trial judge, and cannot be appropriately reviewed by either the de novo or the material evidence standard. It is a unique situation that calls for its own scope of review.

The Courts are in agreement upon one guideline relevant to the standard of review under discussion, if no other. In *Reeves v. Catignani*, 157 Tenn. 173, 7 S.W.2d 38 (1928), this Court said:

> "The amount of the verdict is primarily for the jury to determine, and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial and heard the evidence." 157 Tenn. at 176, 7 S.W.2d at 39.

That observation has been approved in many cases. E. g., *Monday v. Millsaps, supra*; *Stark v. Yost, supra*; *Templeton v. Quarles, supra*; and *Wilson v. Cook Mfg. Co., supra*.

■ We agree with the following statement in *Stark v. Yost, supra*:

> "It has been said so many times in cases wherein the question of the excessiveness of the verdict is at issue, that the Trial Court should not interfere with the jury verdict on the ground of excessiveness unless the amount of the verdict is beyond the range of reasonableness." 334 S.W.2d at 958.

■ We think it is the exclusive province of the jury to assess damages within the range of reasonableness established by the credible proof[2]; that trial judges are without authority to reduce or increase jury verdicts that are between the upper and lower limits of that range. If a trial judge sitting as thirteenth juror cannot approve a jury verdict that is within the range of reasonableness established by the credible proof, he has the authority to order a new trial, but not to increase or reduce the verdict.

■ Thus, the appellate review of a trial judge's actions in making use of remittitur or additur resolves into a determination of whether or not the jury verdict is within the range of reasonableness established by the credible proof. The upper and lower limits of that range must be determined by a reasoned examination of the credible proof of damages and all factors that have bearing upon the amount of recovery. The use of the "conscience of the court", sanctioned in some of the cases, is not appropriate, in our opinion. The credibility of expert and lay witnesses and the probative value to be given their respective testimony is, of course, involved in determining the range of reasonableness. Appellate review should involve a determination of whether the jury's verdict or the trial judge's use of a remittitur or additur has established or rejected the credibility of any witness. The amounts awarded by the jury and the trial judge may also indicate the probative value given to the testimony of the witnesses. Throughout the review, the jury's determinations should be given primary weight and the trial judge's secondary weight.

■ If it is determined that the jury's verdict is within the range of reasonableness or that both the jury's and the trial judge's awards are within that range, the appellate court must restore the jury verdict. If only the trial judge's award is within the range, it must be affirmed. If neither are within the range of reasonableness, the Court of Appeals should make appropriate use of remittitur and render judgment within the range of reasonableness based upon the credible proof of damages.

[10] In this case, three witnesses testified on the issue of damages, the landowner, his expert and the State's expert. The landowner testified that the value of the land taken and incidental damages totaled $24,500; his expert's total was $18,500; and the State's expert, $5,600. The jury verdict

2. See *Tennessee Coal & R. R. v. Roddy*, 85 Tenn. 400, 5 S.W. 286 (1887).

was $11,000, to which the trial judge added $6,000 and rendered judgment for $17,000. No witness was discredited, but obviously the jury and the trial judge disagreed on the probative value to be given their testimony. The jury verdict was $5,400 more than the State's expert and $7,500 less than the owner's expert, indicating that more probative value was given to the State's expert than to the owner and his expert. The trial judge awarded only $1,500 less than the expert testifying for the owner. Of course, both awards are within the zone of reasonableness. It is apparent that the trial judge simply placed himself in the jury box and selected his own figure. That is not, in our opinion, the proper function of the trial judge in suggesting additurs.

Applying what we have said in this opinion to the credible proof of damages would require restoration of the jury verdict. The trial judge's disagreement with the jury was substantial and if the guidelines in this opinion had been available to him, it is likely that he would have awarded a new trial as thirteenth juror. In these circumstances we think it proper that this case be remanded for a new trial. Costs will be divided equally between the parties.

HENRY, C. J., and COOPER, BROCK and HARBISON, JJ., concur.