TINA R. GUFFEY,              )

          )

      Plaintiff/Appellee,    )

          )       **Bedford County Circuit**

          )       **No. 6816**

**VS.**               )

          )       **Appeal No.**

          )       **01A01-9609-CV-00400**

**WENCO OF SHELBYVILLE, INC.**  )

**d/b/a WENDY'S RESTAURANT,**   )

          )

      Defendants/Appellant.   )

**FILED**

February 7, 1997

Cecil W. Crowson
Appellate Court Clerk

## IN THE COURT OF APPEALS OF TENNESSEE

## MIDDLE SECTION AT NASHVILLE

### APPEAL FROM CIRCUIT COURT OF WILLIAMSON COUNTY

### AT SHELBYVILLE, TENNESSEE

### HONORABLE LEE RUSSELL, JUDGE

Richard Demonbreun, Attorney
1000 Demonbreun St., Suite 220
P.O. Box 23826
Nashville, TN 37202-3826
ATTORNEY FOR PLAINTIFF/APPELLEE

Steven A. Dix, Attorney
Suite 201, Court Square Building
201 W. Main Street
Murfreesboro, TN 37130
ATTORNEY FOR DEFENDANTS/APPELLANTS

## AFFIRMED AND REMANDED.

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:

BEN H. CANTRELL, JUDGE
WILLIAM C. KOCH, JR., JUDGE

| TINA R. GUFFEY, | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | |
| | ) | Bedford County Circuit |
| | ) | No. 6816 |
| VS. | ) | |
| | ) | Appeal No. |
| | ) | 01A01-9609-CV-00400 |
| WENCO OF SHELBYVILLE, INC. | ) | |
| d/b/a WENDY'S RESTAURANT, | ) | |
| | ) | |
| Defendants/Appellant. | ) | |

## O P I N I O N

This is a "slip and fall case" in which the jury awarded $173,250, and the defendant appealed.

The only issue on appeal is whether, in response to a post-judgment motion, the Trial Judge erred in declining to allow defendant a credit for $45,268.92 for amounts previously paid to or on behalf of plaintiff by defendant's liability insurance carrier.

The record is sharply abbreviated. It consists only of the following:

1. The complaint, which alleges negligence, injuries, expenses of past and future treatment, past and future pain and suffering, bodily impairment, past and future loss of wages and earning capacity, and loss of service and consortium

2. The answer, denying all facts relevant to this appeal and asserting comparative negligence.

3. An order reciting a finding by the jury of $175,000 damages to the injured plaintiff, 1% fault by said plaintiff and zero damages to the spouse. Judgment was awarded to the injured plaintiff for $173,250.

4. A "Motion to Modify the Judgment" to reduce it $45,268.92, the amount paid to or on behalf of the injured plaintiff by Aetna Casualty Company, liability insurance carrier of defendant.

5. An sworn memorandum in support of said motion.

6. An affidavit reading as follows:

I, Chester J. Craig, after having first been duly sworn, do state and affirm upon personal knowledge as follows:

1. I am a claims supervisor with the Travelers/Aetna Casualty and Surety Company and I am the supervisor responsible for the claim of Tina Guffey.

2. My company has already paid $18,424.78 in medical expenses to health care providers of Tina Gaffey for treatment arising out of her accident at Wendy's on January 8, 1993.

3. My company has already paid directly to Tina Guffey $26,844.14. Therefore, the total amount advanced to or on behalf of Tina Guffey is $45,268.92.

7. An unsworn response to defendant's motion, asserting that the only medical expenses proven at trial were those not paid by defendant, and that counsel for defendant assured counsel for plaintiff that no set-off would be claimed for payment of unproven expenses. The response is silent regarding the $26,844.14 allegedly advanced directly to plaintiff.

8. A "Memorandum Opinion" of the Trial Judge stating:

The carrier paid pre-trial $45,268.92 in medical specials and in lost wages. There is no evidence of any written or oral agreement between the Plaintiff and the carrier about credit for these two categories of payments either at the time the payments were made or subsequently. There was a pre-trial conference in the case, at which the defendant sought to exclude certain medical bills from the proof, including bills already paid by the carrier. This judge recalls that at the pre-trial conference in the case, there were vague discussions of streamlining the case, but no agreement on how or whether any credits

for payments made pre-trial were to be handled. At trial only $4,345.00 of the medical expenses paid by the carrier were proved, and no lost wages were paid. Not only was there no proof of who paid the expenses and wages or whether they were paid, but there was not even any proof of lost wages or of most of these medical expenses.

The Defendant did not, for obvious reasons, attempt to prove the fact that the carrier had paid any expenses. Neither party attempted to prove the fact that wages had been lost or that most of the medical expenses had even been incurred. The Defendant did not request that the Plaintiff be made to prove the element of his damages or raise with the court during the trial the significance of the failure of the Plaintiff to prove those particular damages.

If any part of the judgment in this case is offset by the amount of the pre-trial payments, then the Defendant will receive funds for lost wages and medical expenses which the jury intended for another purpose, for instance, loss of earning capacity in the future or pain and suffering. If this court held that there is no set-off and that the Defendant is not entitled to recover any of the funds pre-paid, then the Defendant simply loses the benefit of having dealt generously with the Plaintiff. This court holds that the judgment contains only $4,345.00 for the payment of medical expenses which had been paid pre-trial to or for the Plaintiff. The Defendant is entitled to a credit for that amount.

This ruling should not be construed as foreclosing the issue of the Plaintiff's debt to the carrier. The carrier is not a party to the tort litigation,. And it may be that there will have to be litigation between the carrier and the Plaintiff to determine what the contractual or equitable obligations of the Plaintiff are to the carrier. One must speculate how the carrier would have perceived the obligations of the Plaintiff to repay if the Defendant had prevailed at the trial on the liability issue. The carrier certainly could have dealt with these issues in a clear way, in writing, when it first began making payments to or for the Plaintiff. The Order entered by this court on this motion will be limited to the issue of set-off.

9. An order stating:

**IT APPEARED** to the Court as follows:

1. That the jury's verdict was in all respects consistent with the evidence in the case and was not excessive in its amount;

2. That the Defendant is therefore not entitled to a remittitur;

3.	That the Defendant is entitled to a set-off against the judgment of $4,345.00 for medical payments made pre-trial and proved by the Plaintiff at trial; and

4.	That the Defendant is not entitled to a set-off in this litigation for any other amount paid to or for the Plaintiff prior to trial and the rights and obligations of and between the carrier and the Plaintiff which result from the pre-trial payment of expenses and wages not proved at trial is expressly found to be inappropriate for determination in this case, and therefore

**IT IS ORDERED** that the Motion for Remittitur is denied and

**IT IS further ORDERED** that the Defendant receive a set-off in the amount of $4,345.00 against the judgment of $173,250.00 award in this case by the jury.

10.	Notice of Appeal and Appeal Bond.

In *Byrd v. Stuart*, 224 Tenn. App. 46, 450 S.W.2d 11, (1969), the injured party executed a "Receipt for Expense Advanced" stating:

> "This amount is to be credited to any final judgment which you may obtain as a result of This accident."

After entry of judgment in favor of plaintiff, the Trial Court refused defendant's request for reduction of the judgment to the extent of the advancement. Defendant brought a separate action in equity for the same relief. The Chancery Court sustained a demurrer and dismissed. The Supreme Court reversed, remanded for further proceedings and said:

> While we have not heretofore considered the procedure of obtaining proper credit for advance payments of judgments, we are not, however, convinced that appellant was without a means of relief in the law division of the trial court. In this we have been greatly persuaded by the authority of what so far as we are aware in the only reported case dealing with the procedure of obtaining proper credit for advance payment of judgments. That case was *Edwards v. Passarelli Bros. Automotive Service, Inc.*, 8 Ohio St.2d 6, 37 Ohio O.2d 298, 221 N.E.2d 708, 25 A.L.R.3d 1087 (1966).
>
> [6] So far as we are aware, such post judgment motions are unknown in the practice and procedure of

this state. We strongly feel, however, that matters such as this should be resolved in the suit at law. We conceive of no reason why, after the jury has returned its verdict and been discharged, and any motions for new trial and remittitur or additur have been disposed of, the defendant could not move the court to accept proof of the advance payment. Should the trial judge then find the advancement to have been made, he could incorporate the partial satisfaction in his judgment.

[7] Nowhere in the record of this cause is it shown that appellant ever attempted to claim his partial satisfaction of judgment in the law division. Under the facts of this case we are not inclined to say that this deprives appellant of his relief in equity.

Presumably, on remand, the Chancery Court awarded the requested refund of advancement.

In *Howard v. Abernathy*, Tenn. App. 1988, 751 S.W.2d 432, no "agreement to refund advancement" was signed. However, the expenses advanced were proved and included in the judgment. The Trial Court overruled a post judgment motion for credit for the advancements. This Court reversed and reduced the judgment by crediting the advancements. This Court discussed the applicable principles of law stated in *Byrd v. Stuart* and concluded:

This Court conceives of no valid reason why the foregoing should not be controlling in the present case despite the lack of an express agreement for credit and the subsequent adoption of T.R.C.P. Rule 8.03.

If a post-judgment payment had not been credited upon the judgment, the defendant certainly would have a right to an order allowing the credit. No reason occurs to this Court why credit should not likewise be allowed for a pre-judgment payment. The action of the Trial Judge is before this Court for review de novo. This Court is therefore in position to and should take the action which should have been taken by the Trial Judge.

The action of the Trial Judge disallowing the credit is reversed. The judgment is reduced from $7500.00 to $6093.00.

Plaintiff asserts that the expenses and damages for which advancements were made for defendant were not proved by agreement of counsel and were not included in the verdict and judgment.

The memorandum of the Trial Judge quoted above, serves as his finding of fact as to what did and did not occur in his presence.

A careful reading of that memorandum fails to disclose any support for any allegation of any agreement between counsel. There is no affidavit or other evidence in the record from which this Court could find an agreement between counsel.

The memorandum of the Trial Judge does establish that only $4,345.00 medical expenses were proved, and no loss wages were paid (proved?).

Burden of Proving Damages

The comparative fault doctrine has altered the process by which the jury allocates fault among the parties, but it has not altered the process for calculating the plaintiff's damages. Juries still have the exclusive province to assess damages within the range of reasonableness established by the proof. *Smith v. Shelton*, 569 S.W.2d 421, 427 (Tenn. 1978); *Tennessee Coal & R.R. v. Roddy*, 80 Tenn. 400, 407-08, 5 S.W.286, 289 (1887). The jury's first task is to determine the total amount of the plaintiff's damages based on the proof. Then, and only then, can the jury proceed to allocate fault among the parties (including the plaintiff) and to determine each party's monetary liability by dividing the total amount of the plaintiff's damages by the percentage of fault allocated to the party.

The comparative fault doctrine has likewise not altered the burden of proof in negligence cases. Plaintiffs still have the burden of presenting proof that will enable the jury to reasonably determine the amount of their damages. *Keith v. Murfreesboro Livestock Mkt.*,

*Inc.*, 780 W.W.2d 751, 755 (Tenn. Ct. App. 1989); *Dill v. Gambill Asphalt Materials*, 594 S.W.2d 719, 722 (Tenn. Ct. App. 1979. We should not acquiesce in a procedure that permits the jury to speculate about the extent of the plaintiff's damages.

In a typical personal injury case, the plaintiff will present proof concerning (1) the circumstances of the injury, (2) the medical treatment received and need for additional medical treatment, (3) the cost of the medical treatment, (4) pain and suffering, (5) and the future impact of the injury on the plaintiff's life. If we permit the plaintiff to testify about his or her medical treatment without also requiring proof of the cost of the treatment, we leave the jury to speculate about how much the medical expenses were. Thus, the jury's calculation of damages may end up bearing no relationship to the actual cost of the medical treatment.

Plaintiffs in personal injury cases have the burden of proving all their damages, including damages for which they have received some advance payment. They should not be relieved of this burden unless (1) the court has excluded otherwise competent damage evidence or (2) the parties have formally agreed or stipulated that proof concerning certain damages will not be presented to the jury. In all other circumstances, the courts should find that the amount of damages calculated by the jury represents the full amount of damages to which the plaintiff is entitled. Unless one of these two circumstances exist, the courts should subtract any advancements a defendant has made from the verdict against that particular defendant without regard to whether or not the plaintiff introduced proof of these damages. We need not decide in this case what should be done if the advancements exceed the amount of the judgment against a particular defendant.

Upon this meager record, this Court is unable to presume that evidence of certain expenses was not introduced as a result of an unproven agreement between counsel. In the absence of a transcript, this Court cannot presume that the jury was instructed to include in

the verdict only proven expenses and losses, and that they obeyed that instruction, thereby excluding such damages from the verdict.

In this record, we have only the general verdict of the jury for $173,250.00, the affidavit of $45,268 paid to plaintiff, the memorandum of the Trial Judge asserting that no monetary losses were proven except $4,345.00, and an order reducing the judgment by this amount.

This Court cannot presume that the jury included unproven damages in its verdict.

This Court can and does presume that the $4,345 proven medical expense was considered in arriving at the general verdict. Therefore, the set-off should be in this amount.

The judgment of the Trial Judge is reducing the original judgment of $173,250.00 by only $4,345.00, resulting in a net judgment of $168,905.00 is affirmed. Costs of this appeal are taxed against the plaintiff. The cause is remanded to the Trial Court for further proceedings.

**AFFIRMED AND REMANDED.**

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:


_____
BEN H. CANTRELL, JUDGE


_____
WILLIAM C. KOCH, JR., JUDGE