## IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT NASHVILLE

**FILED**

**November 19, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

_____

|  |  |  |
|---|---|---|
| **JEANETTE FRAZIER**, | ) | Coffee County Circuit Court |
|  | ) | No. 27382 |
| Plaintiff/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 01A01-9703-CV-00110 |
|  | ) |  |
| **STONEY KYLE GEORGE and**, | ) |  |
| **SHERMAN A. GEORGE**, | ) |  |
|  | ) |  |
| Defendants/Appelleess. | ) |  |
|  | ) |  |

_____

From the Circuit Court of Coffee County at Manchester.
**Honorable John W. Rollins, Judge**

**Doyle E. Richardson**, ROGERS, RICHARDSON & DUNCAN, Manchester, Tennessee
Attorney for Plaintiff/Appellant.

**Barbara J. Perutelli**, SCHULMAN, LeROY & BENNETT, P.C., Nashville, Tennessee
Attorney for Defendants/Appellees.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**LILLARD, J.**: (Concurs)

The plaintiff, Jeanette Frazier, sued the defendants, Stoney Kyle George and Sherman A. George, for injuries and damages sustained as a result of an automobile accident on November 16, 1994. The complaint alleges that the plaintiff was traveling north on U.S. Hwy. 41 when defendant Stoney Kyle George crossed the southbound lane of the highway and struck the vehicle driven by the plaintiff. It is alleged in the complaint and admitted that the George vehicle was owned by Sherman A. George, driven by his son Stoney and was a family purpose vehicle.

The defendants admitted liability. The jury returned a verdict in favor of the plaintiff and against the defendants in the amount of $5,000. Plaintiff filed a post-trial motion praying the trial court to suggest an additur or, in the alternative, a new trial. The motion was denied and the trial judge approved the verdict. Plaintiff appeals and presents the following issues:

1. Whether the verdict of the jury is manifestly against the weight of the evidence so as to entitle the plaintiff to a new trial.

2. Whether or not there was jury misconduct in improperly considering whether TennCare had already paid the plaintiff's medical bills.

3. Whether or not the [trial judge] erred in instructing the jury in respect to their questions about insurance.

Ms. Frazier testified that she was experiencing stiffness the day following the accident and went to the emergency room where a Dr. Yang prescribed pain pills and muscle relaxers. He referred her to Dr. Gary Stevens as she was still having pain in her neck and arms. She testified that for a period of 3 to 4 months after the accident she was unable to work. Due to her husband's incarceration on a D.U.I., it was necessary for her to continue to operate their game room but that she would basically open the business and sit in a recliner. She further testified she was not able to eat or sleep following the accident and taking Tylenol made her sick at her stomach. She testified as to having headaches which she had not experienced prior to the accident. Ms. Frazier denied telling the investigative officer that she was not hurt but did admit that she told the officer she did not need to go to the hospital.

Dr. Stevens testified that he is an osteopathic physician practicing the specialty of orthopedics. He first saw Ms. Frazier December 12, 1994 at which time her main complaint was low

back pain. She stated that she got out of her car and went to her knees after the accident.

He testified further that when she came back to see him the problems had changed to the neck and upper back and also related a problem with her vision for about an hour and a half which had now resolved. On physical examination the reflexes of her upper and lower extremities were normal. She had tenderness over the left knee but the patient told him that this was normal as she had had tenderness in that knee since a prior surgery. She was also tender to palpitation over the left shoulder blade as well as tightness around the neck. X-rays were essentially normal and his diagnosis was a cervical and thoracic strain commonly referred to as whiplash. He recommended physical therapy. He saw her next on January 9, 1995 when she told him that the physical therapy he had ordered was too painful so she had stopped going. Her main complaint was severe headaches. She stated that she had been dropping things and felt that her hands seemed to be getting worse. He felt these complaints, with the exception of the knee, were consistent with the accident. He next saw her on February 6 and her condition was basically unchanged. March 20 complaint is essentially the same, headaches had improved. April 19, 1995 still headache over the left eye and pain in the left shoulder blade.

On May 22 patient stated that she had actually improved over the last 7 to 10 days and her pain was now a little more bearable. She is no longer going to physical therapy and had only one headache in the last 3 or 4 weeks. She mentioned she was running the game room 7 days a week and that the pain, when she does get it, is between the shoulder blade area. Dr. Stevens felt that at that point things were starting to turn around. July 17 patient stated that she was doing well, now able to sleep at night, pain flares up from time-to-time but is now controllable. At that point the patient needed to return only if needed. He felt that activity wise she could do whatever she tolerated and he did not give her any particular restrictions. He advised her that with this type of injury the problem she would most likely encounter would be employment which required constant bending over which, over an 8 hour period, would aggravate her upper back. Also advised that vacuuming should be broken down into periods of time.

Patient seen again on November 1 with left knee pain which turned out to be a suture which had worked its way up and he felt it was most likely related to the original 1985 injury. It may

have been aggravated by the automobile accident but removing the suture did not lead to any impairment. She was last seen August 28 at which point her complaints and physical examination were pretty much consistent with his previous testimony. He specifically noted a large trigger point on the inner aspect of the left shoulder. She mentioned difficulty with bending over and he encouraged her to continue exercising. He gave her a permanent impairment rating of 5%. He did not anticipate much future medical needs.

On cross-examination he testified that the last visit was primarily for purposes of his deposition rather than treatment. He dismissed her July of 1985 when she reported she was able to sleep well and was controlling her pain. Physical therapy was discontinued because she was extremely tender to manipulation or deep massage. He did not place any restrictions on her as he believes that each person is best able to determine their own. He felt that within a period of six weeks she would have been able to perform some forms of jobs for 8 hours a day.

The only eyewitnesses to the accident who testified were the two drivers. Ms. Frazier described the accident that, as she was proceeding northbound in the inside lane on the four-lane road she had just come through a traffic light when she was hit broadside. It was dark and raining. She testified that the impact knocked her vehicle across one lane and caused it to jump the curb and into the parking lot of a game room. She was driving 30 to 35 m.p.h. She described the damage to her vehicle as a fan having been knocked loose, the back bumper dented and the passenger side dented. She admitted to previous damage to the vehicle. She was able to drive the car home.

Stoney Kyle George testified that he stopped in the median after having crossed two lanes. When he looked in the direction from which Ms. Frazier's car came, he noticed that the traffic light approximately a half a block away had just turned green. He didn't see any cars coming and pulled forward and felt something tap his fender. He then saw the other car pull off the road and into the Players' parking lot and then stopped. He disagreed with Ms. Frazier's testimony that when they hit it knocked her car over into the parking lot and she jumped the curb. He testified that right after the vehicles collided, he saw her with her brake lights on, slowing down into the parking lot and then coming to a complete stop "like nothing was wrong. She just stopped there." He saw her get out of the car and was walking around. He asked her if she was alright and she replied that she was fine.

She kept on saying that she just wished she had a Cadillac. He observed her open the door to her car, step out and was walking around. He described the damage to his vehicle as a small dent. He testified that he was traveling less than 5 m.p.h. when he pulled out.

Sherman A. George, Stoney's father, testified that he was called to the scene by his son. When he arrived at the scene, Ms. Frazier was talking to the police officer to whom she twice responded that she was not injured. She told the officer that she had had a previous back injury but did not need to go to the hospital.

As to the first issue, the amount of compensation in a personal injury case is primarily for the jury. Next to the jury, the most competent person to pass on the matter is the trial judge who heard the evidence. *Foster v. Amcon Int'l, Inc.*, 621 S.W.2d 142 (Tenn. 1981); *Smith v. Shelton*, 569 S.W.2d 421 (Tenn. 1978). It is the appellant's position that the extent of her injuries and medical expenses of $1,876 render the verdict inadequate. Where the trial judge has approved the verdict, the review in the court of appeals is subject to the rule that if their is any material evidence to support the award, it should not be disturbed. *Ellis v. White Freightliner Corp.*, 603 S.W.2d 125 (Tenn. 1980). According to *Smith v. Shelton*, "[t]he credibility of expert and lay witnesses and the probative value to be given their respective testimony is, of course, involved in determining the range of reasonableness. . . . The amounts awarded by the jury and the trial judge may also indicate the probative value given to the testimony of the witnesses." *Smith*, 569 S.W.2d at 427. In examining the evidence before us, we note that the severity of the impact, Ms. Frazier's statements and actions following the accident, as well as the extent of damage caused by the accident were disputed. It is not unlikely that the jury accepted Mr. George's version. Although Ms. Frazier's two daughters, ages 19 and 15, were passengers in her vehicle, neither of them testified at trial. We do not find that the trial court erred in failing to grant an additur.

The appellant next argues that there was jury misconduct in improperly considering whether TennCare had paid the plaintiff's medical bills. She reasons that the jury must have assumed this because of her appearance and unsophisticated language which caused the jury to speculate that she was poor. Two of the exhibits introduced into evidence by the plaintiff contained the term "C/BS TENN CARE" and "/BS TENN CARE." The exhibits are obviously copies of

medical bills and we are unable to determine from the quality of the copy why the above quoted language appears. Three of the medical bills contain the following: "IRREVOCABLE ASSIGNMENT INSURANCE BENEFITS ON FILE." Appellant is not in a position to complain when the exhibits introduced by her contain this language.

The basis of Appellant's third issue is an exchange between some of the jurors and the trial court when the jury returned to the court room with a question after beginning their deliberations. The exchange was as follows:

> THE COURT: All right. The first question on everybody's mind, "All we asked, Judge, is a question. Why didn't you just tell us and send it back there? Why did he bring us out here?" Okay. Because the law requires me to talk to all of you at one time. And so that's the reason I'm making you come out here as opposed to me going back there.
>
> Good questions. "Have the medical bills been paid by TennCare?" That's a question that I cannot answer, ladies and gentlemen. It's not proper for me to.
>
> Second, "Why are we considering payment of medical costs?" Because that is a part of the lady's claim for damages, her medical costs. That's part of her claim for damages. Sir?
>
> JUROR (1): If the medical bills have already been paid then why is she still claiming --
>
> THE COURT: Because she's entitled to recover them under the law.
>
> JUROR (1): Recover what?
>
> JUROR (2): Even if she didn't pay them?
>
> THE COURT: No, ma'am. The bills have been paid. No. No. I'm sorry. No. The medical bills have not been paid. I don't mean to misstate that, but this lady is entitled to have her medical bills paid under the law. That's what her claim is for in this litigation. Okay?
>
> JUROR (1): Excuse me, Judge Rollins. The form --
>
> JUROR (3): (Interposing) No matter if some insurance paid it already or not?
>
> THE COURT: Well -- and I've already instructed you about insurance. Insurance -- you're not to consider insurance one way or the other. That's under Tennessee law. That's just -- right, wrong or indifferent, that's the law and we've got to live with it.
>
> JUROR (1): We have the medical bills in there.
>
> THE COURT: Yes, sir.

JUROR (1): And on one of the sheets it says about payment and amount due by patient and it says, "zero."

THE COURT: Well --

JUROR (1): (Interposing) It's the first two --

THE COURT: (Interposing) I guess the thing that I can say to you without commenting on the evidence -- which is not proper for me to do, comment on the evidence. You are to determine what -- whether or not -- it's the jury's decision to determine whether or not the medical bills should be paid. I can tell you that she has a legal right to claim and recover her medical costs for her injuries in this accident and you as -- I don't remember who said it, but trust me. Some nefarious politician, but you can trust me.

JUROR (1): The only reason the question comes up is because we want to be fair.

THE COURT: I Understand.

JUROR (1): And --

THE COURT: (Interposing) I understand.

JUROR (1): We're led to believe now based on what we've seen in front of us stamped, "Yes," "Yes," and it was a question as to payment and amount due by defendant was zero.

THE COURT: Okay. I don't know about that because I really haven't looked at it, but I can assure you that under the law in Tennessee this lady is entitled to recover her medical bills. Once this is over I might be in a position to give you a better idea of why that is so, but right now I can't. And I'm not trying to play games with you. I wish I could, but I -- you just have to accept that whether it makes any sense or not. Sometimes the law is not filled with common sense, folks, and -- if you haven't already sorted that out by now -- but have I answered your questions? Okay. As best I can answer your question.

Again the questions were elicited from information contained on documents submitted into evidence by the plaintiff. We do not find that the trial court committed error in the manner in which he responded to the question. He again instructed the jury that they were not to consider insurance. The appellant did not ask for any curative instructions nor move for a mistrial at that point. We do not find this issue to have merit.

The judgment of the trial court is affirmed and the costs of this appeal are taxed to the appellant.

_____
FARMER, J.

_____

HIGHERS, J. (Concurs)


_____

LILLARD, J. (Concurs)